THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH A. NURSE *et al.*, Defendants-Appellants.

First District (5th Division)   No. 83—2498

Opinion filed March 1, 1985.

James J. Doherty, Public Defender, of Chicago (Georgeen M. Carson, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Timothy J. Joyce, and Brian S. Crowley, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Following a jury trial, defendants Joseph A. Nurse and Curtis Johnson were found guilty of armed robbery. Nurse was sentenced to

16 years' imprisonment; Johnson was sentenced to 12 years. Defendants appeal, contending that: (1) the prosecution's use of peremptory challenges to systematically exclude black jurors deprived defendants of a constitutionally representative jury, (2) the trial court abused its discretion in denying defendants' motion for a continuance or mistrial when a necessary witness was unexpectedly unavailable for trial, and (3) the prosecution failed to prove them guilty beyond a reasonable doubt. We affirm.

Following selection of the petit jury, defendants moved for a mistrial, alleging that the State had systematically excluded blacks from the jury by the use of peremptory challenges. The trial court denied the motions, stating that it was required to follow the decisions of this court and of the Illinois Supreme Court which hold that peremptory challenges are not subject to judicial scrutiny. Testimony was then presented at the trial.

Carlos Magana testified at trial. On April 5, 1983, at 3 p.m., while at a currency exchange signing his paycheck, he noticed a man looking at his check from about three feet away. Magana then cashed the check, placed some of the money in his pants and the rest in a hidden pocket in his jacket. Magana then walked three blocks to his home. Upon arriving outside his second-floor apartment, he heard footsteps and saw a man with a gun coming up the stairs. A second man was with him. Magana identified Nurse as the man with the gun and Johnson as the second man. Johnson was also identified in court as the man who watched Magana sign his paycheck. The men demanded Magana's money and a struggle ensued. During the struggle, Magana's wife opened the door of the apartment and observed the robbers. Magana shouted at her to close the door and call the police. She complied. Magana then pushed Johnson partially down the stairs. Nurse then pushed Magana down the stairs, followed after him, and tried to take his jacket while Magana was lying on his back on the first-floor landing. Magana rolled off the landing, ran to the back door to enter his apartment and waited for the police, who took him to the hospital, where he was treated for head injuries and released.

Three days later, on April 8, 1983, Magana and his wife were at a laundry when they observed one of the robbers walking down the street. Police were called and Johnson was arrested. Nurse, who was with Johnson at the time and had his face partially concealed with a baseball cap, was not then arrested. Subsequently, at the police station Magana inquired what had become of the man who had been with Johnson. Thereupon, Nurse was arrested and later identified by Magana in a lineup as the other armed robber.

Barbara Magana substantially corroborated her husband's testimony. She added that one of the men outside the apartment turned and looked at her from one foot away for a few seconds. She identified this man as Johnson. This was also the man she recognized on the street on April 8. She testified that she did not see the face of the other person at the time of the incident.

Defendants called several witnesses to account for their whereabouts the afternoon of the armed robbery. Antoinette Johnson, defendant Johnson's niece, said she saw Johnson at her apartment just before 3 p.m., at which time he was seeking to borrow money. Thelma Johnson, the defendant's mother, testified that she arrived home after 4 p.m. that day and found him watching television.

Beatrice Wilson, the former wife of Nurse, testified that he left her apartment in Evanston at about 2 p.m. that day and returned with his friend Sidney Thomas at 3:15 or 3:20 p.m. She stated that the first occasion she told anyone that Nurse was with her at that time was on direct examination. Gwendolyn Green testified that she saw Nurse with Sidney Thomas at the Gray Moon tavern on North Paulina Avenue at about 3:45 p.m. on April 5, 1983. Another friend of Nurse's, Hayward Rose, testified that Nurse and Thomas were in the Gray Moon at 4 p.m. that day. Green and Rose both acknowledged that the currency exchange where the victim cashed his paycheck was located near the Gray Moon. Thomas testified that he had repeatedly tried to contact the police to tell them that Nurse was with him at the time of the armed robbery, but was unable to reach the officers investigating the case.

During trial on August 30, 1983, the defense requested a continuance or mistrial when it was learned that the officers who first reported to the scene of the armed robbery would not be available to testify. The State responded that one of the officers was on a medical furlough indefinitely and the other was on leave until September 15, 1983. The court denied defendants' motion, stating that the prosecution was not required to produce witnesses under such circumstances and did so only as an accommodation. The court also stated that there had been "quite a lot of cross-examination and discussion of the point in issue" and that the jury had therefore been apprised of the dispute.

Following the jury's verdicts and the impositions of sentences, defendants appeal.

OPINION

■ Defendants' first contention on appeal is that the prosecution's systematic exclusion of blacks by peremptory challenges de-

prived defendants of a constitutionally representative jury. Specifically, they assert that they were denied equal protection and that they were denied their sixth amendment right to a jury drawn from a fair cross-section of the population, as enunciated in *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692.

Defendants in support of their motion for a mistrial stated that nine of the 40 potential jurors were black and were excluded from the jury by the State's peremptory challenges. The State responded that one white juror was also challenged and that the victim was Mexican and the defense had excluded potential jurors of Mexican descent.

The Illinois supreme court has heretofore expressly held that excluding blacks by the use of peremptory challenges is not a violation of equal protection. (*People v. Gaines* (1985), 105 Ill. 2d 79; *People v. Davis* (1983), 95 Ill. 2d 1, 447 N.E.2d 353.) In addition, reversal is not required under the sixth amendment when peremptory challenges are used to exclude black jurors in an individual case. (*Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692; *People v. Payne* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202; *People v. Williams* (1983), 97 Ill. 2d 252, 454 N.E.2d 220.) Accordingly, when only the alleged exclusion of blacks in a particular case is presented, there is no violation of defendants' rights, because it is an essential part of our trial by jury system that both sides in a case may exercise such peremptory challenges as they deem advisable. *People v. Payne* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202; *People v. Williams* (1983), 97 Ill. 2d 252, 454 N.E.2d 220.

In *People v. Mack* (1985), 105 Ill. 2d 103, 122, the court again held that no constitutional violation is presented by the use of peremptory challenges in such circumstances, stating:

> "Regardless of the many emotional arguments on this question that have been raised in this court and in our appellate court, there is just no evidence that blacks are systematically and purposefully excluded from serving on juries in Cook County where the defendants are black. *** The defendant has demonstrated no need to jeopardize the vitality of a very essential tool of our adversary system, the peremptory challenge, by attaching restrictions and conditions to its use."

Defendants draw our attention to a recent decision of the United States Court of Appeals for the Second Circuit, *McCray v. Abrams* (2d Cir. 1984), 750 F.2d 1113, in which the court affirmed a district court decision (*McCray v. Abrams* (E.D.N.Y. 1983), 576 F. Supp. 1244) and held that a *prima facie* violation of a black criminal defendant's sixth amendment rights had been established when the State used its

peremptory challenges to exclude black and Hispanic prospective jurors on the basis of their group affiliation. The *McCray* court in a two-to-one decision reasoned that if there is the sixth amendment requirement that the venire represents a fair cross-section of the community, it must logically be because it is important that the defendants have the chance that the petit jury will be similarly constituted. It concluded, "We thus agree that the Sixth Amendment does not require any action to ensure that the representative character of the venire be carried over to the petit jury; we think the Amendment simply prohibits the state's systematic elimination of the possibility of such a carry-over." Notwithstanding *McCray*, the doctrine of *stare decisis* compels us to adhere to the holdings of our own State supreme court. Decisions of lower Federal courts are not binding on State courts. *City of Chicago v. Groffman* (1977), 68 Ill. 2d 112, 368 N.E.2d 891; *People ex rel. Illinois Federation of Teachers v. Lindberg* (1975), 60 Ill. 2d 266, 326 N.E.2d 749; *People v. Stansberry* (1971), 47 Ill. 2d 541, 268 N.E.2d 431, *cert. denied* (1971), 404 U.S. 873, 30 L. Ed. 2d 116, 92 S. Ct. 121.

Defendants acknowledge in their brief that the Illinois Supreme Court's decisions, especially *People v. Payne*, control this case. Their brief states, "We raise this issue with the hope that *Payne* will not remain forever the law in the State of Illinois. We urge Illinois Courts to follow the lead of other jurisdictions which prohibit racial discrimination at the jury selection stage and set up procedures to allow the defendant to rebut the presumption of constitutionality which clings to peremptory challenges." It is well settled that the appellate court may not overrule or modify decisions of the supreme court. (*Beagley v. Andel* (1978), 58 Ill. App. 3d 588, 374 N.E.2d 929; *Belden Manufacturing Co. v. Chicago Threaded Fasteners, Inc.* (1967), 84 Ill. App. 2d 336, 228 N.E.2d 532.) It is beyond this court's power as an intermediate court of review to allow defendants' argument to prevail when direct supreme court authority to the contrary exists.

■ Defendants' second contention is that the trial court abused its discretion in denying their motion for a continuance or mistrial after the two police officers who responded to the scene of the crime were unexpectedly unavailable for trial. Their brief asserts, "The testimony of these officers unexpectedly became crucial when the victim, Carlos Magana inexplicably testified that he never gave police a description of the two men who robbed him."

Defendants' request for a continuance or mistrial was made during trial on August 30, 1983, when it was learned that the officers were not available for trial. Defense counsel asserted that calling one

of these officers would be critical since the victim inexplicably testified that he never gave police a description of the robbers on the day of the crime. The State responded that one of the officers was on a medical furlough indefinitely and the other was on leave until September 15, 1983. The prosecutor stated that he had tried to accommodate counsel by phoning the police department to inquire about the officers but that it was not his responsibility to obtain defense witnesses who are unavailable. The court denied defendants' motion and stated that the State was not required to produce witnesses under such circumstances and did so only as an accommodation. The court added that there had been considerable cross-examination and discussion of the point in issue and that the jury had therefore been apprised of the dispute.

The record discloses that the victim on cross-examination testified that he just told the police "they were black guys" and didn't give them any description, and that later he talked to some detectives and gave them a description, "certain heights," "certain complexion," and "didn't tell him the color of hair." He further testified, "I just tell him how they look like. They were two black guys," and he told them what they were wearing, but did not remember ever giving any height or weight or any description of their facial hair or anything like that.

The decision whether or not to allow a continuance to obtain a witness is within the discretionary powers of the trial court, and such decision will not be disturbed on appeal without a showing of a clear abuse of discretion. (*People v. Bryant* (1983), 115 Ill. App. 3d 215, 450 N.E.2d 744.) Similarly, the trial court is to exercise sound discretion in deciding whether a mistrial should be declared, and that power is to be used with the greatest caution, and for very plain and obvious causes. (*People v. Phillips* (1974), 29 Ill. App. 3d 529, 331 N.E.2d 163.) When a continuance is sought to obtain the presence of a witness, there must be a showing of a diligent effort to have the witness present and where such facts are not demonstrated, the motion for a continuance is properly denied. (*People v. Polk* (1979), 70 Ill. App. 3d 903, 388 N.E.2d 864.) When reviewing the exercise of discretion in the denial of such a continuance, this court must determine whether the testimony is material and could have affected the outcome of the case. (*People v. Rivera* (1978), 64 Ill. App. 3d 49, 380 N.E.2d 1018.) It also must be noted that the absence of a witness whose testimony would corroborate only collateral aspects of the defendant's testimony is not sufficient justification for a continuance. *People v. Bryant* (1983), 115 Ill. App. 3d 215, 450 N.E.2d 744.

Here, the unavailability of the police officers did not amount to the urgent circumstances or the plain and obvious cause required for a mistrial. As the court pointed out, the jury was apprised of the disputed identification through the victim's testimony on cross-examination. In reference to the continuance, no showing was made that the defendants made a diligent request or other effort to obtain the presence of the police officers. More importantly, defendants never demonstrated that the outcome of the case would be affected by the testimony of either of the officers. Although the victim did testify that he did not give a description to police at the scene, he said he later gave detectives a description of the robbers. This is quite plausible in light of his testimony on direct examination that when police arrived at the scene, they took him to the emergency room where he was treated for head injuries. Furthermore, the victim also made a positive identification of each of the defendants in court. Therefore, even if the defense could have elicited testimony from the officers that the victim either did or did not offer a description at the scene, or on the way to the emergency room, this would still be merely a collateral matter, since he subsequently identified both defendants in court. Under the facts and circumstances of this case, denial of defendants' motion for a mistrial or continuance to obtain a witness was not an abuse of discretion.

■ Defendants' final contention is that they were not proved guilty beyond a reasonable doubt. However, a reviewing court will not disturb a jury's determination of guilt unless the evidence is so improbable as to raise a reasonable doubt of guilt; the positive and credible testimony of a single witness is sufficient to support a conviction notwithstanding contrary evidence by the accused. (*People v. Bibbs* (1981), 101 Ill. App. 3d 892, 428 N.E.2d 965.) It is not required that the time for observation be of a prolonged nature. (*People v. Reed* (1980), 80 Ill. App. 3d 771, 400 N.E.2d 688.) With reference to defendants' alibi testimony, the court may not disregard unimpeached alibi testimony, but it must also consider the bias or interest, if any, of the witnesses, and it is not under any obligation to believe alibi testimony over the positive identification of the accused. *People v. Crawford* (1980), 90 Ill. App. 3d 888, 414 N.E.2d 25.

Here, both defendants were identified in court by the victim. He had previously identified Johnson on the street and Nurse in a lineup. The victim's wife also identified defendant Johnson in court. The victim had a substantial opportunity to observe the two robbers while they were struggling with him for his money on the stairs outside of his apartment. In addition, he also observed the robber he identified

as Johnson at the currency exchange where the victim went to cash his paycheck. The victim's wife also had a substantial opportunity to observe one of the robbers when she opened the door of her apartment and saw her husband being robbed at gunpoint. She testified that, although she did not see the faces of both men, the one whom she identified as Johnson turned and looked directly at her for several seconds. Therefore, the identification of defendants by the victim and his wife was sufficient to convict defendants of armed robbery. The alibi testimony the defendants presented could be properly discounted by the jury as biased, since Johnson's alibi was presented by his niece and his mother and Nurse's alibi was presented by his ex-wife Beatrice Wilson and his good friend Sidney Thomas. We find from a review of the record that the evidence was not so implausible or improbable as to raise a reasonable doubt of defendants' guilt.

Accordingly, the jury's determination will not be disturbed. For the foregoing reasons, defendants' convictions and sentences for armed robbery are affirmed.

The People's request that they be awarded a fee of $75 for defending this appeal and conducting oral argument is allowed, and the award is incorporated in the judgment herein. *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.