**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230359-U

Order filed June 18, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0359 Circuit No. 18-CF-5 |
| | ) | |
| ESTEBAN M. AVILA, | ) ) | Honorable H. Chris Ryan, Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Justices Brennan and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The circuit court's denial of defendant's postconviction petition following a third-stage evidentiary hearing was not manifestly erroneous.

¶ 2    Defendant, Esteban M. Avila, appeals the La Salle County circuit court's dismissal of his postconviction petition following a third-stage evidentiary hearing. We affirm.

¶ 3                              I. BACKGROUND

¶ 4          On January 2, 2018, the State charged defendant by information with one count of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(1) (West 2016)) and one count of aggravated battery (720 ILCS 5/12-3.05(e)(1) (West 2016)) in connection to a drive-by shooting. When present at an April 12, 2018, pretrial conference, defendant waived his right to a jury trial, and on September 12, 2018, the cause proceeded to a bench trial. The court convicted defendant on both counts and subsequently sentenced defendant to 12 years' imprisonment in the Illinois Department of Corrections.

¶ 5          Defendant appealed his conviction arguing that there was insufficient evidence presented to prove that he was driving the vehicle in question when the crime occurred. This court disagreed and, in a February 16, 2021, disposition, affirmed defendant's conviction, holding the evidence was sufficient to prove his guilt beyond a reasonable doubt. *People v. Avila*, 2021 IL App (3d) 180727-U, ¶ 15.

¶ 6          Thereafter, defendant retained new counsel and filed a postconviction petition which argued, *inter alia*, that his trial counsel was ineffective for (1) failing to investigate his alibi defense, (2) waiving a jury trial prior to an investigation into defendant's alibi defense, and (3) stipulating to certain material questions of fact. Further, defendant argued within his petition that the cumulative effect of these errors deprived him of his right to a fair trial. Four affidavits supported defendant's petition: the first was from defendant; the second was from his brother José Avila Jr.; the third from the mother of his children, Sara Makarczyk; and the fourth from his mother, Linda Orozco-Avila. The first three affiants averred to their personal knowledge of defendant's whereabouts away from the scene of the crime at the relevant timeframe. In Orozco-Avila's affidavit, she swore that defendant's trial counsel made unfulfilled strategy decisions that he spoke with her about in anticipation of defendant's trial. The petition advanced to a third-

stage evidentiary hearing where three witnesses, José, Makarczyk, and Orozco-Avila, testified on defendant's behalf. The circuit court denied his petition finding that, among other deficiencies, he failed to make a substantial showing of a constitutional violation.

¶ 7                                           A. Defendant's Trial

¶ 8        The following evidence was adduced at trial on September 12, 2018. Cheyenne Donnelly testified that after spending time at her cousin's house the previous evening, she and five other individuals returned to her house during the early morning hours of December 31, 2017. Defendant was among the group. At this time, Donnelly resided in a two-story home in Marseilles, Illinois, with her bedroom situated on the top floor. The six individuals congregated in Donnelly's bedroom where defendant soon fell asleep. Donnelly asked one of her friends to assist defendant downstairs to sleep, but in doing so, defendant and the friend began fist fighting. Once the fight concluded, the group asked defendant to leave, however, more fighting ensued as defendant made his way downstairs. According to Donnelly, the scuffles took place around 6:30 a.m. and 7:00 a.m., and defendant eventually left with a bloodied face. Several individuals saw defendant operate a white four-door vehicle that morning, and one individual confirmed that he saw defendant leave in it.

¶ 9        Following defendant's departure, those remaining at Donnelly's returned upstairs to her bedroom. Suddenly, drywall began "flying all over the place" causing hysteria among the group, and Donnelly felt a burning sensation in the back of her neck. It was later revealed that an individual had discharged a firearm from the street towards Donnelly's bedroom and Donnelly was struck by debris. After crawling to the bathroom, the group called 911 around 7:38 a.m., and Donnelly received medical attention at a nearby hospital thereafter. The other individuals present testified consistently with Donnelly's testimony.

¶ 10    Marseilles Police Detective Jack Callahan testified that he was dispatched to Donnelly's residence concerning a shooting just after 9:00 a.m. on December 31, 2017. Upon arrival, he collected four bullet casings from the street in front of the house. During his exterior examination of the residence, he noted three bullet holes surrounding the upstairs window. After entering Donnelly's residence, he swabbed several "red, blood-like substance[s]" and retrieved two fired bullets from upstairs. Stipulated forensic analysis of the reddish, bloodlike substances matched defendant's DNA. Callahan also spoke with the group members concerning the incident.

¶ 11    At 3:15 p.m., Callahan drove to defendant's residence in the neighboring town of Ottawa, Illinois. There, he had the opportunity to speak with defendant and his father and examine the exterior of the residence. During his interview with defendant, he noted visible injuries to defendant's face. Callahan located a bullet casing on top of a white four-door Kia Optima parked in the driveway next to the home. Pursuant to a search warrant, Callahan collected a total of five bullet casings on the exterior of the Kia, two of which were embedded in snow atop the vehicle. He did not locate a firearm or ammunition during his search of the residence. Stipulated forensic analysis of the collected shell casings identified a "major female DNA profile." Further, it was stipulated that the State's firearms analyst issued a report that the casings found on the street in front of Donnelly's residence and on the Kia were discharged from the same firearm.

¶ 12    Callahan obtained a set of surveillance footage from a school located in Ottawa, Illinois and a beauty salon located near Donnelly's residence. The footage depicted the Kia leaving Donnelly's residence at 7:01 a.m. A vehicle matching the Kia's description then drove to Ottawa and reversed its path past Donnelly's residence at 7:36 a.m. Defendant stipulated to the foundation and entry of this footage. However, defendant's counsel objected to Callahan's characterization that the video depicted defendant, stating the videos spoke for themselves.

4

¶ 13    On September 21, 2018, the court found defendant guilty on both counts. At the conclusion of the sentencing hearing, it imposed a 12-year sentence for each offense, to be served concurrently.

¶ 14                              B. Defendant's Postconviction Petition

¶ 15    On May 12, 2021, without representation, defendant filed a postconviction petition which contended a violation of his right to effective assistance of counsel for his trial counsel's failure to investigate and present his alibi defense. 725 ILCS 5/122-1(a)(1) (West 2020). After retaining appellate counsel, defendant filed an amended petition in early 2023 which supplementally alleged that his trial counsel was ineffective for advising and pressuring him to waive his right to a jury trial, failing to pursue a motion to suppress evidence over the bullet shell casings, and stipulating to the introduction of evidence concerning the shell casings and surveillance footage. Defendant averred that he provided his trial counsel with José's and Makarczyk's contact information, asked his trial counsel to pursue them as alibi witnesses, that these witnesses would have testified he was not near the place where the shooting happened when it occurred, and his counsel did not make an effort to investigate his alibi defense. Various exhibits supported the amended petition, including an April 25, 2018, letter penned by trial counsel to his client which indicated that defendant disclosed an alibi defense but that counsel was unaware of his alibi witnesses. The letter also cautioned putting on an alibi defense, stating if the court "does not buy it, I expect he might hold that against you." Defendant's petition also contained affidavits from José and Makarczyk, averring that on December 31, 2017, during the timeframe of the crime they possessed firsthand knowledge that defendant remained at home. Orozco-Avila's affidavit, also attached to defendant's petition, averred to trial counsel relaying to her pretrial strategies that went unpursued.

¶ 16 Defendant also attached an evidence deposition of his trial counsel in support of his amended petition. In explaining his recommendation to proceed to a bench trial, counsel explained "we were going to stand on [defendant's] presumption of innocence rather than present an affirmative defense, and I thought we had a better chance relying on the presumption of innocence *** with the judge than we would have with the jury," later opining that judges better understand the presumption. Further, based on the forensic evidence he believed "it was inescapable" that the shell casings recovered from the top of defendant's vehicle were fired from the same weapon from the shells retrieved from the ground of the crime scene. He testified that aside from defendant's mother, defendant did not provide him with other potential alibi witnesses. His recollection, to which he could not testify with certainty, was that he spoke with defendant's mother concerning the alibi and she either was not willing to testify or it was his opinion that it would not be a viable defense. Defendant's trial counsel also testified to the phone call record-keeping practices of his law office. For phone messages, his secretary would write down the name and phone number of the caller and the date and time at which they called on a separate sheet of paper. After reviewing these logs in anticipation of his deposition, he confirmed that there was no record of any phone calls from José Avila Jr. or Sara Makarczyk. Had defendant disclosed these witnesses, his trial counsel testified that he would have contacted them.

¶ 17                                    C. Third-Stage Evidentiary Hearing

¶ 18 On May 15, 2023, defendant's postconviction petition advanced to a third-stage evidentiary hearing.

¶ 19                                    1. José Avila Jr.'s Testimony

¶ 20        José testified that at approximately 7:24 a.m. on January 1, 2018, he heard knocking at the door of the residence he shared with his brother. José answered the door to find defendant looking a "little roughed up" with marks on his face, a black eye, and dried blood. Defendant explained that he had been in a fight. After going to the bathroom, José observed defendant head downstairs to his room where he remained until police took custody of him. José testified that he contacted defendant's trial counsel and left a "couple voice messages" to let him know that he was willing to cooperate with his brother's defense. According to José, defendant's trial counsel never returned his calls. During cross-examination, the State inquired into why José did not formalize a statement explaining his brother's whereabouts after his brother was brought into custody. José explained that he was unaware of an obligation to do so.

¶ 21                          2. Sara Makarczyk's Testimony

¶ 22        Makarczyk testified that before heading to work on January 1, 2018, she drove to defendant's residence to drop off their children. She testified that there was no car in the driveway. Upon arrival, she encountered José on the couch who explained defendant was downstairs in the basement. Around 7:40 a.m., she went downstairs to find defendant looking exhausted with a "very swollen" and bloodied face. After confirming that defendant was okay, Makarczyk testified that she left the residence at "about 7:50 [a.m.]" Makarczyk explained that she was never given the opportunity to talk with defendant's trial counsel. She testified to calling and leaving voice messages with trial counsel's secretary over the course of weeks. She approached trial counsel in court, but counsel "brushed it off."

¶ 23                          3. Linda Orozco-Avila's Testimony

¶ 24        Orozco-Avila testified that after she retained defendant's counsel, she met with him in-person approximately five times and frequently spoke with him over the phone. She stated that

7

counsel advised her of the need to retain their own DNA expert and file a motion to suppress, but he failed to accomplish either.

¶ 25    After additional briefing, the matter came before the court on July 6, 2023, for final argument and ruling. The court found that there was nothing presented to suggest defendant was pressured to waive his right to a jury. In addition, the court found insufficient evidence to conclude that a constitutional violation occurred when trial counsel failed to call an alibi witness. It stated that trial counsel's conduct was not so egregious so as to fall below an acceptable standard. It further concluded that defendant failed to establish that the outcome would have been different had counsel pursued an alibi defense.

¶ 26    Defendant timely appealed.

¶ 27                                   II. ANALYSIS

¶ 28    On appeal, defendant argues his trial counsel provided ineffective assistance of counsel when he failed to appropriately investigate his alibi defense, waived a jury trial prior to an appropriate investigation into his alibi defense, and stipulated to material issues of fact. Further, he argues that these errors taken together amount to reversible cumulative error.

¶ 29    The Post-Conviction Hearing Act (Act) provides a mechanism for criminal defendants to challenge convictions and sentences by asserting via petition that the judgment resulted from a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. See 725 ILCS 5/122-1(a)(1) (West 2022); *People v. English*, 2013 IL 112890, ¶ 21; *People v. Harris*, 206 Ill. 2d 1, 12 (2002). A postconviction proceeding is a collateral attack on the proceedings and not an appeal from the judgment of conviction. *English*, 2013 IL 112890, ¶ 21. To be entitled to postconviction relief, defendant must establish a substantial deprivation of

8

federal or state constitutional rights in the proceedings resulting in conviction. See *Harris*, 206 Ill. 2d at 12.

¶ 30    For postconviction petitions challenging noncapital offenses "the Act provides a three-stage process." *People v. Beaman*, 229 Ill. 2d 56, 71 (2008). Here, defendant's petition advanced to a third-stage evidentiary hearing pursuant to section 122-6 of the Act. See 725 ILCS 5/122-6 (West 2022). "At a third-stage evidentiary hearing, the defendant bears the burden of making a substantial showing of a constitutional violation." *People v. English*, 406 Ill. App. 3d 943, 951 (2010). At this stage, the court assumes the role of factfinder, "making credibility determinations and weighing the evidence." *People v. Reed*, 2020 IL 124940, ¶ 51. We will not reverse a trial court's decision following an evidentiary hearing where fact-finding and credibility determinations are involved unless its ruling is manifestly erroneous. *Beaman*, 229 Ill. 2d at 72. Manifest error is one that is " ' clearly evident, plain, and indisputable.' " *People v. Johnson*, 206 Ill. 2d 348, 360 (2002) (quoting *People v. Ruiz*, 177 Ill. 2d 368, 385-86 (1997)).

¶ 31                        A. Ineffective Assistance of Counsel at Trial

¶ 32    Defendant asserts that he was deprived of his right to effective assistance of counsel in three ways. First, defendant argues that his trial counsel failed to investigate his alibi defense of which his counsel was aware. Second, defendant claims his trial counsel's decision to waive a jury trial prior to an investigation into the alibi defense constituted ineffective assistance of counsel. Third, defendant states he received ineffective assistance when his trial counsel stipulated to material questions of fact introduced by the State at his trial. He also claims that, considered together, his trial counsel's ineffectiveness resulted in reversible cumulative error.

¶ 33    A criminal defendant is afforded the constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. To prevail on a claim that

9

counsel was ineffective, a defendant must show that his or her counsel's representation was deficient to the extent that it fell below an objective standard of reasonableness and that the defendant was prejudiced by counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). This two-pronged test requires both a showing that trial counsel's "performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Domagala*, 2013 IL 113688, ¶ 36 (quoting *Strickland*, 466 U.S. at 694). In the first prong of the *Strickland* test, the "performance" prong, there is a "strong presumption that counsel's conduct fell into a wide range of reasonable representation." *People v. Cloutier*, 191 Ill. 2d 392, 402 (2000). It is defendant's burden to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* The second prong of the Strickland test, the "prejudice" prong, requires a showing that "counsel's deficient performance rendered the result of the proceeding unreliable or fundamentally unfair." *People v. Easley*, 192 Ill. 2d 307, 317-18 (2000). A failure to satisfy either prong "precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35.

¶ 34                                    1. Failure to Investigate

¶ 35        Defendant contends his trial counsel's failure to investigate his alibi defense and interview purported alibi witnesses constituted ineffective assistance of counsel. The State responds that trial counsel appropriately investigated defendant's alibi defense based on the information that was provided to him.

¶ 36        "Trial counsel has a professional duty to conduct 'reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' " *Domagala*, 2013 IL

10

113688, ¶ 38 (quoting *Strickland*, 466 U.S. at 691). A counsel's duty to investigate extends to "both factual and legal investigations on behalf of the[ir] client." *People v. Montgomery*, 327 Ill. App. 3d 180, 185 (2001) (citing *People v. Morris*, 3 Ill. 2d 437, 452 (1954)). "The failure to investigate a witness may constitute ineffective assistance of counsel [citation], especially where the witness is known to counsel and his testimony could serve to exonerate the defendant [citation]." *People v. Jarnagan*, 154 Ill. App. 3d 187, 194 (1987); *People v. Coleman*, 183 Ill. 2d 366, 398 (1998). Whether defense counsel's failure to investigate falls below the objective standard of reasonableness is determined by the value of the evidence and the closeness of the case. See *Jarnagan*, 154 Ill. App. 3d at 194; see also *People v. Dillard*, 204 Ill. App. 3d 7, 10 (1990). We apply "a heavy measure of deference to counsel's judgment" when reviewing "the reasonableness of a decision to investigate." *Cloutier*, 191 Ill. 2d at 402-03; see also *Strickland*, 466 U.S. at 691.

¶ 37        Defendant contends that his trial counsel's letter, dated April 25, 2018, proves his counsel's awareness of his alibi defense. While the letter indicates that defendant conveyed a potential alibi defense, it does not conclusively establish that specific witness identities and contact information were ever tendered to his counsel. During counsel's evidence deposition, he testified to his recollection of the conversation giving rise to the letter, recalling that defendant later identified his mother as an alibi witness. Defendant's counsel further recalled that he spoke with defendant's mother concerning the alibi and she either was not willing to testify or did not present, in his opinion, a viable alibi defense. Defendant's mother confirmed having conversations with her son's counsel at the evidentiary hearing, wherein she testified that she met with counsel in-person "about five times" and "talked to him often on the phone."

11

¶ 38    Defendant's position that his counsel was aware of the witnesses supporting his alibi defense relies on his witnesses' account of unreciprocated outreach efforts. Indeed, at the evidentiary hearing, both José and Makarczyk testified that they left voicemails with trial counsel's office explaining their availabilities to testify on defendant's behalf. However, trial counsel testified during his evidence deposition that after reviewing his office's phone records, he never received a phone call from either witness. See *People v. English*, 403 Ill. App. 3d 121, 136 (2010).

¶ 39    The alibi witnesses also undermined their credibility by testifying inconsistently with their affidavits filed in support of defendant's petition. *Id.* at 137. While they correctly identified the date of the incident in their affidavits, José and Makarczyk misidentified the date as January 1, 2018, at the third-stage evidentiary hearing. In sum, the circuit court could reasonably conclude that counsel was unaware of the alibi witnesses that defendant suggested supported his defense.

¶ 40    Further, the record indicates that trial counsel adequately investigated the alibi witness of which he was made aware. While unable to recollect with certainty, trial counsel recalled evaluating Orozco-Avila as an alibi witness. Counsel's resultant refusal to call Orozco-Avila as a witness falls squarely within the ambit of trial strategy, which "enjoy a strong presumption that they reflect sound trial strategy, rather than incompetence [citation], and are, therefore, generally immune from claims of ineffective assistance of counsel [citation]." *People v. Enis*, 194 Ill. 2d 361, 378 (2000). We hold that it was not manifest error for the court to find that defendant failed to meet his burden of showing his trial counsel was ineffective for his failure to investigate his alibi defense.

¶ 41    Even if counsel was apprised of José and Makarczyk as alibi witnesses and that their omittance fell below the reasonable standard of advocacy, we hold that this deficiency would not render defendant's conviction unreliable or fundamentally unfair. *Easley*, 192 Ill. 2d at 317-18. The bevy of evidence against defendant, including motive and circumstantial evidence connecting him to the crime, independently supports his conviction and minimizes any potential influence from these witnesses' testimony over the outcome of the case.

¶ 42                                    2. Jury Waiver

¶ 43    Defendant next asserts that his trial counsel's decision to waive a jury trial prior to investigating defendant's alibi defense rendered his assistance ineffective. Like the right to effective assistance of counsel, a criminal defendant's right to a jury trial is enshrined in both the United States Constitution and the Illinois Constitution. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 8, 13.

> "When a defendant's challenge to a jury waiver is predicated on a claim of ineffective assistance of counsel, the court must determine: (1) whether counsel's performance fell below an objective standard of reasonableness; and (2) 'whether there exists a reasonable likelihood that the defendant would not have waived his jury right in the absence of the alleged error.' " *People v. Batrez*, 334 Ill. App. 3d 772, 782 (2002) (quoting *People v. Maxwell*, 148 Ill. 2d 116, 142-43 (1992)).

¶ 44    We must first point out that it was not his counsel's decision, but defendant's decision to waive his jury trial right. "[T]he prerogative to choose a bench trial over a jury trial belongs to the defendant and not to his counsel." *People v. McCarter*, 385 Ill. App. 3d 919, 943 (2008). Further, counsel's advice on whether to waive defendant's jury trial right is "the type of trial strategy and tactics that cannot support a claim of ineffectiveness." *People v. Elliott*, 299 Ill.

13

App. 3d 766, 774 (1998). There is nothing in the record to challenge the court's determination that defendant was not pressured into waiving his right to a jury trial and that he did so voluntarily. The court and defendant's trial counsel explained the suggestion of waiver as calculated legal advice. The court stated that maybe defendant's counsel "thought jurors would go a little bit softer than courts as far as proofs. We see more than jurors do." According to counsel, he advised defendant to waive his right to a jury because he "thought [defendant] had a better chance relying on the presumption of innocence *** with the judge than we would have with the jury" because, according to counsel, judges better understand the presumption. Such advice does not constitute ineffective assistance of counsel. See *People v. Simon*, 2014 IL App (1st) 130567, ¶ 74.

¶ 45                           3. Stipulations to Material Facts

¶ 46        Defendant next asserts that his trial counsel's failure to challenge the admissibility of certain evidence, including the surveillance videos and forensic findings, amounted to objectively unreasonable and ineffective assistance. The State responds that defendant failed to present any evidence at the evidentiary hearing to support his argument that his counsel performed deficiently in stipulating to the entry of this evidence.

¶ 47        While defendant focuses on inconsistencies in the State's evidence, such as a time discrepancy in one of the surveillance videos, uncertainty about the record custodian's authority over the other surveillance video, and forensic evidence of a female DNA profile on the shell casings, he fails to explain how such evidence would be excluded save these stipulations. See *In re T.R.*, 2019 IL App (4th) 190529, ¶ 134. Further, perseverating on evidence that circumstantially tied defendant to the crime scene—namely the bullet casings—including any cross-examination of forensic findings, may have provided additional opportunity for the State to

14

reemphasize its forensic findings that the bullet casings were discharged from the same gun, were found at the crime scene, and were also found on the vehicle that defendant was confirmed to be driving a mere 35 minutes before the commission of the crime. See *id.* ¶ 135. Due to the stipulation which clarified that the shell casings had a "major female DNA profile," defense counsel was able to argue that the State failed to connect defendant, a male, to the shooting in his closing argument while preventing further examination by the State.

¶ 48     As such, defendant fails his burden to overcome the presumption that his counsel's efforts to minimize the importance of what his attorney deemed the "inescapable" conclusion that the shell casings found on the Kia were fired from the same weapon as those casings recovered from the scene of the crime, reflected sound trial strategy. *Enis*, 194 Ill. 2d at 378; *Cloutier*, 191 Ill. 2d at 402. We also hold that stipulating to the entry of the surveillance footage, which trial counsel explained was self-evident, was similarly the product of sound trial strategy.

¶ 49                                    B. Cumulative Error

¶ 50     Defendant's final appellate contention is that his trial counsel's deficient performance collectively resulted in cumulative error which deprived him of a fair trial. "There generally is no cumulative error where the alleged errors do not amount to reversible error on any individual issue." *People v. Green*, 2017 IL App (1st) 152513, ¶ 118. Having concluded that defendant's trial counsel was not ineffective, we hold that there is no cumulative error. *People v. Sims*, 2019 IL App (3d) 170417, ¶ 60.

¶ 51                                    III. CONCLUSION

¶ 52     The judgment of the circuit court of La Salle County is affirmed.

¶ 53     Affirmed.

15