(No. 76430.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DARRYL SIMMS, Appellant.

*Opinion filed November 22, 1995.*

180

HARRISON, J., took no part.

Charles M. Schiedel, Deputy Defender, and Kim Robert Fawcett, Assistant Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

Roland Burris and James E. Ryan, Attorneys General, of Springfield, and James E. Ryan and Anthony Peccarelli, State's Attorneys, of Wheaton (Barbara A. Preiner, Solicitor General, and Arleen C. Anderson and Steven J. Zick, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

After a bench trial in the circuit court of Du Page

County, defendant, Darryl Simms, was convicted of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)), aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)), criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)), armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2), home invasion (Ill. Rev. Stat. 1985, ch. 38, par. 12—11(a)), and residential burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—3(a)). This court affirmed these convictions in *People v. Simms* (1988), 121 Ill. 2d 259 (*Simms I*), but reversed and remanded for a new sentencing hearing, where defendant was sentenced to death. In *People v. Simms* (1991), 143 Ill. 2d 154 (*Simms II*), this court again vacated defendant's death sentence and remanded to the circuit court. At his third capital sentencing hearing, defendant elected to be sentenced by a jury. The jury found defendant eligible for the death penalty and concluded there were no mitigating factors sufficient to preclude the imposition of the death penalty. Defendant was sentenced to death, but the sentence was stayed (107 Ill. 2d R. 609(a)) pending direct review by this court (Ill. Const. 1970, art. VI, § 4(b); 134 Ill. 2d R. 603). We affirm defendant's sentence.

On appeal to this court, defendant argues that (1) a juror was improperly excused for cause; (2) the jury venire was not a fair cross-section of the community; (3) gang evidence was admitted in violation of his right of confrontation and his freedom of association; (4) his statement about a past crime was improperly admitted; (5) evidence of defendant's past crime violated his sixth amendment right to counsel, (6) his statement during processing was admitted in violation of *Miranda*; (7) the prosecutor made improper statements during closing argument; (8) the trial court improperly admitted convictions of four counts of residential burglary; (9) he was entitled to a *Gacho* natural life instruction; (10) his *pro se* motion for new counsel was improperly denied;

and (11) the Illinois death penalty statute is unconstitutional.

## FACTS

The evidence presented during the eligibility phase was substantially similar to the evidence presented during the eligibility phase of defendant's second sentencing hearing. (See *Simms II*, 143 Ill. 2d at 162-66.) In the interest of brevity, those facts will be repeated only as necessary to address defendant's arguments.

At the second stage of the capital sentencing hearing, the State presented evidence of defendant's criminal record. He had twice been adjudicated delinquent and his juvenile criminal history included theft from school lockers after cutting the locks off; setting his school on fire; residential burglary; auto theft; and burglary of a church. His adult criminal activity included burglary of a laundromat; attempted auto theft; possession of a stolen motor vehicle; and unlawful possession of a weapon.

On behalf of the State, three women testified regarding previous contacts with defendant. Sharon Williams testified that, in 1980, she agreed to go on a date with defendant, who was then 19 years old. Defendant, along with two male friends, picked her up. She got into the back seat of the car with defendant, who subsequently forced her, at knifepoint, to have sexual intercourse.

Sandra Sender stated that defendant, who was a friend of her ex-husband, knocked on her door one morning. After she let him inside, he pulled a knife and strangled her. She passed out. When she regained consciousness, defendant was having sexual intercourse with her. She then distracted defendant long enough to flee the building and call the police. Defendant was convicted of aggravated battery.

Mary Matas testified that defendant attacked her as she was on her way home one day after work. Defen-

dant grabbed her from behind after she got in her car, cut her with a knife, and raped her. Several weeks later, as she returned from work and pulled into her garage, defendant attempted to attack her again but he was scared away by a family member.

The State also presented evidence regarding defendant's prison behavior. A former fellow jail inmate testified that defendant attempted to intimidate the other inmates using his gang affiliation. Other witnesses also recounted defendant's gang affiliation. An attorney testified that, while meeting with a client, she observed defendant slap his wife and have her perform oral sex in the prison visiting room. Defendant's wife denied that this occurred. Defendant's prison behavior also included beating another inmate, throwing hot liquid on a prison guard, and various other infractions.

In mitigation, defendant presented evidence of his rough childhood. He was abandoned by his natural father, beaten by an alcoholic stepfather, and not disciplined by his mother. He grew up in a low-income, high-crime neighborhood on Chicago's south side and began using drugs and alcohol at a relatively young age. When defendant was about 16 years old, his mother moved and he lived with an older sister.

Several witnesses testified regarding an incident where defendant was bitten by a police dog as police responded to a burglary being committed by defendant. The dog bite resulted in lacerations to the defendant's penis and thighs and defendant prevailed in a civil suit against the city but the damages were set aside. Defendant's ex-wife, and the mother of his two children, stated that, after the dog-bite incident, he became very aggressive, short-tempered, subdued, and his drug use increased. She also testified that defendant stays in regular contact with his children. Defendant and his current wife married while he was in prison. According to

her, defendant has changed for the better in the past few years and is very loving and supportive of her and her daughter.

Defendant also presented mitigation evidence that he had assisted in a program for juvenile delinquents. In that program, he spoke to groups of youth offenders about his involvement with gangs, drugs, and alcohol and encouraged the youths to stay out of trouble. According to the testimony of the program director and a juvenile who heard him speak, defendant's participation has had a positive influence on the juveniles. While in prison, defendant got his GED and showed interest in taking college courses.

Defendant also presented testimony by a psychiatrist that defendant suffers from an antisocial personality disorder, as well as from post-traumatic stress disorder stemming from the dog-bite incident. He also has suffered from drug and alcohol dependence. Defendant's final witness was a minister, who testified that defendant has changed for the better recently, purportedly showing motivation to become a changed and rehabilitated person.

## ANALYSIS

### I. Excusal of Juror Manjunath for Cause

On appeal, defendant initially alleges that the trial court abused its discretion and denied him a fair sentencing hearing when it excused juror Manjunath for cause. During *voir dire*, the following exchange occurred between the juror and the trial judge:

"Q. Do you have any feelings, strong feelings or not as to the issuance of a death penalty?

A. At this time, I have no strong. Except in the Dahmer case.

\* \* \*

Q. And if you did reach a conclusion in your own mind

along with the other jurors, you could sign your name to a verdict one way or the other saying, no, he shouldn't receive the death penalty or, yes, he should?

A. Yes."

The prosecutor then questioned the juror, concluding with this exchange:

"Q. You will [impose a capital sentence] if the facts and the law require it. Is that right?

A. That's right."

Manjunath was accepted, sworn, and sent home for the weekend. When he returned the following Tuesday, he notified the court that he may have a problem serving as a juror. He was bothered that the case involved a possible death penalty and believed that the length of the trial would interfere with his work.

The State then had an opportunity to question him regarding his views on capital punishment:

"Q. Mr. Manjunath, *** you are still of mind that you could vote to impose a sentence of death; is that correct?

A. See, that was what bothered me, I am worried about the after effects of that. So I am really concerned about that.

Q. You understand that when you were selected and sworn on Friday, you [said] that you could follow the law and impose a sentence of death. Are you still saying that you could do that?

A. At this point I am not sure because it's been bothering me for the weekend. I am worried about the after effects of it.

Q. You mean the fact that the defendant will be put to death if you sign a death verdict?

A. Right.

Q. You understand that is what you said on Friday you would do in the appropriate case?

A. At that time, yes.

Q. Will you do that?

A. I think I am not in that position because it bothered me over the weekend, and I am really worried about my health. So I'd like to be excused.

Q. What do you mean by that, sir?

A. If I do sign my name on a death penalty, then I think I will have something of a religious thing bothering me later.

Q. Are you saying right now that regardless of the circumstances, contrary to what you said on Friday, that regardless of what the facts are you won't sign your name to a death verdict? Is that what you're saying?

A. Right."

After then discussing Manjunath's work-related barriers to jury service, the State moved that he be excused for cause. Defense counsel questioned Manjunath, who stated that he knew he would be excused if he refused to sign a death verdict and that he did not know that when he was examined on the preceding Friday. He also admitted that he had notified his employer about his upcoming jury service but the employer had not indicated any problems. The court granted the State's motion and excused Manjunath for cause, over a defense objection claiming that Manjunath's explanations were a pretext to avoid jury service.

Defendant argues (1) that it was improper to reopen *voir dire* after the juror had been sworn and (2) that the trial court abused its discretion when it excused Manjunath for cause.

As to defendant's first contention, the trial court did not act improperly in reopening *voir dire* to reexamine Manjunath after he had been selected and sworn as a juror. After Manjunath notified the court that he may have a problem, it was necessary for the court to question him further to determine if he was qualified to serve as a juror. See *People v. Childress* (1994), 158 Ill. 2d 275, 293 (after a sworn juror "informed the court that he would have difficulty in considering a death sentence, *** [i]t was entirely proper for the judge to then question the juror further").

With regard to defendant's second claim, a prospective juror in a capital case can be excused for cause

when the juror's views on the death penalty would
" 'prevent or substantially impair the performance of
his duties as a juror in accordance with his instructions
and his oath.' " (*Wainwright v. Witt* (1985), 469 U.S.
412, 424, 83 L. Ed. 2d 841, 851-52, 105 S. Ct. 844, 852,
quoting *Adams v. Texas* (1980), 448 U.S. 38, 45, 65 L.
Ed. 2d 581, 589, 100 S. Ct. 2521, 2526.) A trial court can
excuse a juror for cause if it is the court's impression
that he could not be impartial in making a decision
regarding the death penalty. (*Wainwright*, 469 U.S. at
424, 83 L. Ed. 2d at 851-52, 105 S. Ct. at 852.) Further-
more, a trial court's decision to exclude a juror is
entitled to deference since it is in the best position to
weigh a prospective juror's responses to *voir dire*. (*Chil-
dress*, 158 Ill. 2d at 293-94.) After considering a juror's
remarks as a whole, a trial court may exclude a juror
even though that juror fails to communicate a view on
the death penalty with absolute precision. *Childress*,
158 Ill. 2d at 293-94.

Considering Manjunath's responses as a whole, we
believe the trial court properly exercised its discretion
in excusing Manjunath. (See *Childress*, 158 Ill. 2d at
289-94 (trial court properly excused juror who stated
that he would have great difficulty voting to impose a
death sentence).) Manjunath's responses showed that he
could not be impartial regarding the death penalty and
that in fact he would not sign a death verdict no matter
the circumstances.

Defendant argues that *Childress* is distinguishable
on the basis of factual variations regarding the form of
the juror's initial response and the level of precaution
imposed by the trial court against pretextual state-
ments. The *Childress* juror's initial response was silence
when his panel was asked whether they had scruples
against the death penalty (*Childress*, 158 Ill. 2d at 290),
whereas Manjunath made an initial affirmative re-

sponse that he could be impartial. *Childress* is not distinguishable on that basis. The nature or certainty of Manjunath's initial response is not determinative where the trial court has otherwise concluded that he could not serve impartially.

Defendant further argues that *Childress* is distinguishable in that the trial court in the instant case took no precautions to ensure that Manjunath's views were not merely a pretext to avoid jury service. In *Childress*, the juror sat for the guilt-innocence phase and then, after further *voir dire*, was excused. (*Childress*, 158 Ill. 2d at 293.) However, such precautions against pretextual statements are unnecessary when the trial court has already determined that a juror is unable to be impartial regarding the death penalty. See *Childress*, 158 Ill. 2d at 293 (prior to the guilt-innocence phase, the judge had not yet concluded that the juror could not be impartial regarding the death penalty).

## II. Fair Cross-Section

The defendant next argues that the venire from which the jury was chosen was not a fair cross-section of the community since it contained no African-Americans. Defense counsel made a timely oral challenge of the jury panel prior to the beginning of *voir dire*. The trial court, however, proceeded to rule on the oral motion without requiring it in writing. The State argues that, by failing to make a written motion, the defendant has waived any challenge to the venire. (See 725 ILCS 5/114—3(b) (West 1994) (motion to discharge a jury panel must be in writing).) Defendant has not waived his challenge regarding the jury's racial makeup, however, since the oral motion was made and ruled upon without objection by the State.

In order to show a *prima facie* violation of the fair cross-section requirement, a defendant must show: (1) the group alleged to be excluded is a "distinctive" group

in the community, (2) the group's representation in the venire is not fair and reasonable in comparison to the group's representation in the community, and (3) the under-representation is due to systematic exclusion in the jury-selection process. (*Duren v. Missouri* (1979), 439 U.S. 357, 58 L. Ed. 2d 579, 99 S. Ct. 664; *People v. Peeples* (1993), 155 Ill. 2d 422, 450.) Defendant has failed to state a *prima facie* challenge because he is unable to fulfill the second and third elements. African-Americans are a distinctive group but they comprised no more than 2% of the population of Du Page County. Therefore it is fair and reasonable that some venires in Du Page County will lack African-Americans. Furthermore, defendant has shown no evidence that African-Americans were systematically excluded from jury service in Du Page County beyond his mere assertion to that effect.

### III. Gang Evidence

Defendant alleges that the evidence presented by four different witnesses regarding his gang affiliation was inadmissible. Detective Gorniak testified that defendant claimed to be assigned by his gang to be a jailhouse lawyer. According to Officer Rawski, defendant was known to police as a gang member. Both Gorniak and Rawski stated that defendant's tatoos were common to a particular gang. Goskie, a prison superintendent, testified that he broke up a fight between defendant and another inmate and he overheard the other inmate tell defendant he would not join defendant's gang. Mogavero, a former fellow inmate of the defendant in the Du Page County jail, stated that defendant bragged about his gang affiliation and used it to intimidate other inmates.

At a capital sentencing hearing, the rules of evidence are relaxed and evidence is admissible as long as it is both relevant and reliable. (*People v. Edgeston* (1993), 157 Ill. 2d 201, 236.) Evidence of gang membership is relevant at a capital sentencing hearing as evi-

dence of a defendant's character (*People v. Salazar* (1988), 126 Ill. 2d 424, 468), as well as motive and rehabilitative potential (*People v. Patterson* (1992), 154 Ill. 2d 414, 476). In addition to being relevant, evidence of the instant defendant's gang membership was admissible because it was reliable, having been corroborated by four different witnesses.

Defendant makes additional arguments that the testimony of Goskie and Mogavero should have been excluded. Defendant challenges Goskie's testimony as hearsay and urges us to adopt the reasoning of *Profitt v. Wainwright* (11th Cir. 1982), 685 F.2d 1227, *modified on other grounds* (11th Cir. 1983), 706 F.2d 311, which holds that a defendant has a right of confrontation at a capital sentencing hearing, absent a compelling State interest. In *People v. Johnson* (1987), 119 Ill. 2d 119, 149, this court rejected the reasoning of *Profitt v. Wainwright*, and we do so again now. " '[I]t is well settled that a defendant in a capital case has no due process right to cross-examine all out-of-court sources of information relied upon in sentencing.' " *Johnson*, 119 Ill. 2d at 149, quoting *People v. Jones* (1982), 94 Ill. 2d 275, 286.

Defendant further argues that Mogavero's testimony regarding his gang membership violated his freedom of association under the first and fourteenth amendments of the United States Constitution. The first amendment limits evidence which may be admitted during a capital sentencing hearing. (*Dawson v. Delaware* (1992), 503 U.S. 159, 117 L. Ed. 2d 309, 112 S. Ct. 1093 (aggravating evidence is invalid if it allows a jury to draw adverse references from constitutionally protected conduct); *People v. Ward* (1992), 154 Ill. 2d 272, 342 (first amendment violation occurs upon admission of evidence of gang affiliation that is "irrelevant to proving any aggravating circumstances").) However, evidence of gang affiliation is admissible during a capital sentencing hear-

ing to show a defendant's behavior, violations, and discipline while in prison. *People v. Coleman* (1994), 158 Ill. 2d 319, 357.

The record indicates that defendant's gang membership was related to an aggravating factor. Mogavero's testimony described the defendant's intimidation of other jail inmates. Since defendant's gang affiliation was used by him as the primary source of that intimidation, it is relevant to defendant's behavior while incarcerated. Thus, Mogavero's testimony went to an aggravating factor and is not barred by the first amendment. See *Ward*, 154 Ill. 2d at 342.

### IV. Defendant's Statement of a Past Crime

Defendant argues that the trial court erred when it denied defendant's motion *in limine* seeking to exclude defendant's statement about his attack on Sandra Sender. Defendant told police that he had been in prison for the rape and attempted murder of Sender, although he pled guilty only to aggravated battery for that attack. Sender testified that the nature of the attack was rape and attempted murder. Defendant argues that the statement should have been excluded because the conflict between the conviction and defendant's statement regarding the crime was confusing to the jury and because its prejudice outweighed its probative value.

Hearsay evidence of other crimes is admissible at a capital sentencing hearing if it is relevant and reliable, even if the crime was never prosecuted. (*People v. Hudson* (1993), 157 Ill. 2d 401, 450.) Similarly, evidence of a crime is admissible if relevant and reliable, even if defendant was only convicted of a lesser offense. The evidence regarding the Sender attack was relevant to defendant's character and it was reliable, being corroborated by defendant's statement and the testimony of the victim. Thus, defendant's statement was properly admitted.

## V. Sixth Amendment Right to Counsel

Defendant next argues that evidence introduced at the sentencing hearing violated his sixth amendment right to counsel. While defendant was in custody, a police officer from another jurisdiction questioned him about an uncharged offense without notifying defense counsel. Although defendant denied any involvement with the uncharged offense, the State used several of defendant's related statements at the sentencing hearing as aggravation evidence of his untruthfulness.

The State argues that defendant has waived this claim since defense counsel made only a general objection. A general objection results in a waiver of the claim of error unless (1) the grounds for the objection were clear from the record; (2) trial counsel's assistance was ineffective (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052), or (3) there was plain error (*People v. Edgeston* (1993), 157 Ill. 2d 201, 240).

The defendant has waived this error because none of the three exceptions apply. An objection based on the sixth amendment right to counsel was not clear from the record since, at the time of the general objection, the testimony did not reflect that the defendant was unrepresented by counsel during the statement.

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. (*People v. Gosier* (1995), 165 Ill. 2d 16, 20.) Under *Strickland*, defendant must show (1) that counsel's performance was defective, having fallen below an objective standard of reasonableness, and (2) that counsel's representation so prejudiced defendant that there is a reasonable probability that, without counsel's errors, the outcome would have been different. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

Defendant argues that counsel's performance was

deficient because counsel failed to cite a recent case in an effort to exclude defendant's unrepresented statement. (See *People v. Kidd* (1989), 129 Ill. 2d 432 (holding that the sixth amendment right to counsel was violated when defendant was interrogated without counsel concerning an uncharged offense and defendant's statements were used at the capital sentencing hearing).) Notwithstanding whether counsel's performance was deficient in failing to utilize *Kidd*, defendant's claim of ineffective assistance fails because the challenged statements did not prejudice defendant. (See *People v. Albanese* (1984), 104 Ill. 2d 504, 525-27 (claim of ineffective assistance may be determined by examination of the prejudice prong alone).) It is noteworthy that the challenged statement did not contain a confession to a crime, but rather a denial of involvement in that crime. The only statements from the interview that were presented during the sentencing hearing were statements showing defendant's tendency to be dishonest. Such evidence was cumulative of other evidence of the defendant's dishonesty, including the defendant's three conflicting statements given to police about the murder. In light of the minor role played by the challenged statement, there was no reasonable probability that admission of defendant's statement changed the outcome of defendant's sentencing hearing.

The "plain error doctrine permits a reviewing court to consider an alleged error not properly preserved for review where the evidence is closely balanced or where the error is so fundamental and of such magnitude that the accused was denied a fair trial." (*People v. Edgeston* (1993), 157 Ill. 2d 201, 240.) We first note that the evidence here was not closely balanced. Defendant's crime was especially gruesome, involving rape, theft, and murder via multiple stab wounds. Furthermore, aggravation evidence was extensive, showing defendant's long crimi-

nal history, including violent crimes against women. Over his lifetime, defendant has had extensive dealings with both the juvenile and adult criminal justice systems but defendant has remained unrehabilitated. Secondly, admission of the challenged statement did not deny defendant a fair sentencing hearing. As stated above, there is no reasonable probability that admission of the challenged statement changed the outcome of the sentencing hearing. Accordingly, we find no sixth amendment violation.

## VI. *Miranda*

Defendant next contends that his statement during processing on the night of his arrest was admitted in violation of *Miranda*. (See *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) After being arrested, the defendant was brought to jail. Noticing that the defendant had a leg wound, the jailer asked how he was injured. The defendant replied, "I missed, I cut myself," and then smiled, shrugged, and said he better not say anymore. The defendant argues that the testimony should not have been admitted since the defendant was given no *Miranda* warnings prior to the jailer's inquiry.

Defendant has waived this argument since he neither objected to the statement's introduction at trial nor moved to suppress the statement. To overcome waiver, defendant now argues that his trial counsel was ineffective in failing to move to have the statement suppressed. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) The only possible prejudice of this statement, however, comes from the inference that he missed and stabbed his leg while stabbing the victim. The defendant was not prejudiced by this inference because he admitted stabbing the victim, although he alleged that the victim attacked him first. Since defendant was not prejudiced, defendant's claim of ineffective

assistance of counsel fails and the claim of error is waived.

### VII. Closing Argument

Defendant claims error as to three comments made by the prosecutor during closing argument of the second stage of the sentencing hearing. Specifically, defendant claims that the prosecutor's argument improperly precluded the jury from considering mitigation evidence. During closing argument, the prosecutor remarked, "I will give [the defense] this argument about a kid from a bad neighborhood, where there's gangs or whatever they want. It doesn't matter. That is not mitigation." A few minutes later, the prosecutor commented, "The defendant has completely failed to show any mitigation. Any mitigation. Not just sufficient mitigation to preclude the imposition of death. He hasn't shown any mitigation." Later the State made a similar argument:

> "STATE: Sure he grew up in a tough neighborhood, but he made choices. If you are prepared to say that every kid that grew up in a tough environment, that he turns out like this, that's a mitigating factor and you could never give the death penalty under any circumstances.
>
> DEFENSE COUNSEL: Objection.
>
> COURT: Sustained.
>
> STATE: That is not a mitigating factor."

With regard to the third statement, for which possible error was preserved through a timely objection, defendant claims that the prosecutor's argument improperly precluded the jury from considering mitigation evidence. (See *McKoy v. North Carolina* (1990), 494 U.S. 433, 108 L. Ed. 2d 369, 110 S. Ct. 1227 (jury may not be precluded from considering mitigation evidence).) Here, however, the jury was not precluded from considering mitigation evidence merely because the State argued that such evidence was not mitigation. Of course there are limits to proper argument, but forcefully arguing that the State has proven its case is not, in itself,

improper. See *People v. Ramey* (1992), 151 Ill. 2d 498, 557 (closing argument was not improper where prosecutor argued that " 'once *** you weigh all the aggravating factors, *** it won't be close' "); *People v. Gacy* (1984), 103 Ill. 2d 1, 97 (closing argument was not improper where prosecutor argued that, if the jury failed to impose death, it would be a mockery of the law and the concept of justice).

The prosecutor's statements did not go beyond the bounds of proper argument. First, counsel is given great leeway in closing argument. (*People v. Hudson* (1993), 157 Ill. 2d 401, 441.) The remarks were an attempt to rebut the defendant's mitigation evidence showing that he was the victim of various traumatic and harrowing experiences during his life. Second, the remarks were isolated instances. The prosecutor was not arguing that the law precluded consideration of mitigating evidence. Rather, his comments fit into his overall argument that death was the proper penalty in this case. Third, the judge instructed the jury that closing arguments were not evidence and that "[m]itigating factors may be found in any evidence presented." See *Boyde v. California* (1990), 494 U.S. 370, 384, 108 L. Ed. 2d 316, 331, 110 S. Ct. 1190, 1200 ("arguments of counsel generally carry less weight with a jury than do instructions from the court").

Since defense counsel failed to object to either of the first two challenged statements or include them as error in his post-trial motion, any alleged error as to those statements is waived. (*People v. Edgeston* (1993), 157 Ill. 2d 201, 239; *People v. Enoch* (1988), 122 Ill. 2d 176, 186.) Since the prosecutor's third statement was not improper and was virtually identical to the first two statements, it is unnecessary to address defendant's claim of plain error as to the first two statements.

## VIII. Admission of Residential Burglary Convictions

Defendant argues that he was improperly prejudiced by the admission during aggravation of four convictions for residential burglary, all related to the instant case. In his 1988 bench trial, defendant was convicted of: (1) residential burglary with intent to commit theft, (2) residential burglary with intent to commit murder, (3) residential burglary with intent to commit aggravated criminal sexual assault, and (4) residential burglary with intent to commit armed robbery. At the sentencing hearing, the State, over defense objection, published to the jury all four convictions.

Defendant argues that admission of all four convictions violated the one-act, one-crime rule, citing *People v. King* (1977), 66 Ill. 2d 551. However, defendant may not now argue that he was improperly convicted of four counts of residential burglary because those convictions were affirmed in *Simms I*, 121 Ill. 2d 259. See *People v. Patterson* (1992), 154 Ill. 2d 414, 468 (under the law of the case doctrine, a rule established as controlling will continue to be the law of the case as long as the facts remain the same).

## IX. *Gacho* Instruction

Defendant claims that the trial court abused its discretion when it refused to instruct the jury that defendant would be sentenced to natural life in prison if he was not sentenced to death. (See *People v. Gacho* (1988), 122 Ill. 2d 221, 262 (natural life jury instruction is required in capital sentencing hearings involving defendants who face sentences of either natural life or the death penalty).) In *Simms II*, 143 Ill. 2d at 181, this court rejected defendant's argument that he was entitled to a jury instruction stating the possible terms of imprisonment if a death sentence was not imposed. Defendant now argues that he should be able to waive his eligibility for any sentence less than natural life in order to obtain a *Gacho* instruction.

In support, defendant contends that a waiver of lesser sentences is a form of mitigation and, since relevant mitigation evidence may not be barred, he is entitled to make such a waiver. We reject this argument. A waiver of lesser sentences is not mitigation. A natural life jury instruction is available only under the circumstances stated in *Gacho*. Such an instruction is unavailable where, as here, the defendant is statutorily eligible for a sentence less than natural life in prison. Ill. Rev. Stat. 1987, ch. 38, pars. 1005—8—1(a)(1), 1005—8—2(a)(1); *Simms II*, 143 Ill. 2d at 181.

## X. *Pro Se* Motion for New Counsel

Defendant claims that the trial court improperly denied his *pro se* motion seeking the appointment of new counsel to address claims of ineffective assistance of counsel. Defendant's motion alleged that (1) defense counsel prepared the post-trial motion without defendant's input and (2) defense counsel's ability to represent defendant was impaired by alcoholism. The trial court denied the motion without hearing argument, but defendant was allowed to address the court to preserve the record. During his statement to the court, defendant stated that defense counsel was ineffective in failing to call key witnesses to rebut damaging testimony; failing to call character witnesses regarding the defendant's remorse; and in failing to advise defendant to testify.

There is no *per se* rule that new counsel must be appointed whenever a defendant presents a *pro se* motion for a new trial alleging ineffective assistance of counsel. (*People v. Nitz* (1991), 143 Ill. 2d 82.) Rather, a trial court must examine the facts underlying the defendant's claim and, if the claim is meritless or pertains to trial strategy, the motion may be denied. If the allegations show possible neglect, however, new counsel should be appointed. *Nitz*, 143 Ill. 2d at 134.

Defendant is not entitled to the appointment of new

counsel to argue ineffective assistance of counsel. Counsel's preparation of the post-trial motion and his decision whether to call various witnesses, including the defendant, were matters of trial strategy which may not be second-guessed under *Strickland*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. Defendant failed to show that counsel took any of these actions as a result of neglect. Such generalized grievances, presented through hindsight, are insufficient to require the appointment of new counsel.

### XI. Constitutional Challenges to the Death Penalty

The defendant makes three separate challenges to the constitutionality of the Illinois death penalty. We reject each of these claims for the reasons set forth below.

First, defendant alleges that a statute allowing aggravating factors other than those enumerated is unconstitutionally vague. (See 720 ILCS 5/9—1(c) (West 1994) ("Aggravating factors *** need not be limited to those factors set [forth in the statute]").) We previously rejected this argument (*People v. Rissley* (1995), 165 Ill. 2d 364, 407; *People v. Todd* (1992), 154 Ill. 2d 57, 75-76) and defendant has given no basis for reexamining this position.

Next, defendant claims that the Illinois death penalty statute (720 ILCS 5/9—1(g) (West 1994)) violates the eighth amendment because it precludes meaningful consideration of mitigation. In *Simms II*, 143 Ill. 2d at 183, this court rejected substantially the same argument, and we do so again here.

Finally, defendant argues that his jury instructions were unconstitutional, relying on *Free v. Peters* (N.D. Ill. 1992), 806 F. Supp. 705, *rev'd* (7th Cir. 1993), 12 F.3d 700. We reject this argument as we did in *People v. Thomas* (1995), 164 Ill. 2d 410, 431-32.

## CONCLUSION

For these reasons, we affirm defendant's capital sentence. The clerk of the court is directed to enter an order setting Tuesday, March 20, 1996, as the date on which the capital sentence, entered by the circuit court of Du Page County, shall be carried out. Defendant shall be executed in the manner provided by law. (725 ILCS 5/119—5 (West 1994).) The clerk of this court shall send a certified copy of this mandate to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution where defendant is now confined.

*Affirmed.*

JUSTICE HARRISON took no part in the consideration or decision of this case.