Docket No. 85894–Agenda 5–March 2000.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ROBERT CLOUTIER, Appellant.

Opinion filed May 25, 2000.

JUSTICE HEIPLE delivered the opinion of the court:

Petitioner, Robert Cloutier, appeals from a Cook County circuit court order dismissing his post-conviction petition without an evidentiary hearing. Because petitioner was sentenced to death, this court has jurisdiction over the instant appeal pursuant to Supreme Court Rule 651(a) (134 Ill. 2d R. 651(a)). For the reasons which follow, we affirm.

BACKGROUND

A jury in the circuit court of Cook County convicted petitioner of the first degree murder and aggravated criminal sexual assault of Alice Cogler. Details regarding the evidence presented at petitioner’s trial and sentencing are set forth in the opinions disposing of petitioner’s direct appeal, and will be referred to herein only as necessary to dispose of petitioner’s instant appeal. On direct appeal, this court affirmed petitioner’s convictions, but vacated his death sentence and ordered a new sentencing hearing. 
People v. Cloutier
, 156 Ill. 2d 483 (1993). On remand, a jury again found defendant eligible for the death penalty, this time based on two separate aggravating factors: (1) the murder of Cogler occurred during the course of another felony (720 ILCS 5/9–1(b)(6)(c) (West 1994)), and (2) defendant had been convicted of murdering two or more individuals, in that, since the time of his initial sentencing, defendant had pled guilty to the unrelated first degree murder and aggravated criminal sexual assault of Cynthia Cooney (720 ILCS 5/9–1(b)(3) (West 1994)). Defendant was again sentenced to death. This court affirmed petitioner’s sentence on direct appeal.
 People v. Cloutier
, 178 Ill. 2d 141 (1997).

Petitioner subsequently filed a 
pro se
 petition for post-conviction relief under the Post-Conviction Hearing Act (725 ILCS 5/122–1 
et seq.
 (West 1996)). The circuit court appointed counsel, who amended and supplemented the post-conviction petition. The circuit court granted the State’s motion to dismiss the amended post-conviction petition without an evidentiary hearing, and subsequently denied petitioner’s motion to reconsider.

ANALYSIS

 A proceeding brought under the Post-Conviction Hearing Act is a collateral attack on a judgment of conviction. The principles of waiver and 
res judicata
 limit the scope of post-conviction review. 
People v. Winsett
, 153 Ill. 2d 335, 346 (1992). Consequently, the inquiry in a post-conviction petition is limited to allegations of constitutional violations that were not and could not have been raised previously. 
People v. Eddmonds
, 143 Ill. 2d 501, 510 (1991). The petitioner is entitled to an evidentiary hearing on a post-conviction claim only if he has made a substantial showing, based on the record and supporting affidavits, that his constitutional rights were violated. 
People v. Coleman
, 168 Ill. 2d 509, 537 (1995). In making that determination, all well-pleaded facts in the petition and any accompanying affidavits are taken as true. 
People v. Caballero
, 126 Ill. 2d 248, 259 (1989). This court reviews the dismissal of a post-conviction petition 
de novo
. 
People v. Coleman
, 183 Ill. 2d 366, 387-89 (1998).

Failure to Present Testimony of Victim’s Coworker

Petitioner first claims that trial counsel was ineffective for failing to interview or present the testimony of Brenda Grubisch, a coworker of Cogler and one of the last people to see her alive. At trial, Grubisch was called by the State and testified but was not called by the defense. Petitioner’s theory at trial was that his sexual relations with Cogler just prior to her murder were consensual. Petitioner never denied murdering Cogler, but argued that he did not commit aggravated criminal sexual assault, and thus no such conviction could serve as the basis for his death penalty eligibility. The jury rejected this argument.

In an affidavit attached to the post-conviction petition, Grubisch states that on the night of Cogler’s murder, she, Cogler and petitioner were at a bar where she and Cogler worked, and that she witnessed Cogler and petitioner acting like “a couple for the night.” Grubisch further states that she saw petitioner and Cogler leave the bar together and return about an hour later, where they stayed until closing time. Petitioner argues that this information corroborates his version of the events that took place prior to Cogler’s murder, namely, that the two engaged in consensual sex the first time they left the bar together, thereby supporting his defense that they engaged in consensual sex again after the bar closed, and that only after this consensual sex did petitioner murder Cogler. Petitioner claims that his trial counsel was ineffective for failing to interview Grubisch or to call her as a witness. According to petitioner, had the jury heard the evidence presented in Grubisch’s affidavit, there is a reasonable probability its verdict would have been different and he would not have been sentenced to death.

In order for petitioner to succeed on a claim of ineffective assistance of counsel, he must show (1) that his counsel’s performance was deficient in that it fell below an objective standard of reasonableness, and (2) that counsel’s deficient performance so prejudiced him that there is a reasonable probability that the outcome would have been different without counsel’s errors. 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); 
People v. Simms
, 168 Ill. 2d 176 (1995). A reviewing court may reject a claim of ineffective assistance of counsel by finding that petitioner was not prejudiced by counsel’s representation without determining whether counsel’s performance was deficient. 
People v. Erickson
, 161 Ill. 2d 82, 90 (1994).

In the instant case, even if defense counsel had contacted Grubisch prior to trial and elicited the statements contained in her affidavit, there is no reasonable probability that the outcome of the trial and sentencing would have been different. Evidence presented at trial overwhelmingly indicated that Cogler was sexually assaulted before petitioner strangled her, a finding upheld by this court in petitioner’s direct appeal.
 People v. Cloutier
, 156 Ill. 2d 483, 506 (1993). Specifically, petitioner told police that he strangled Cogler with a fan belt while lying on top of her in the back seat of Cogler’s car and that she did not put up a fight, facts supported by the gross disparity in size between petitioner and the victim. The fan belt was still around Cogler’s neck when her body was found. Fresh bruises and abrasions, however, were found on Cogler’s forehead, elbow, knees and thigh, suggesting the use of force. The headliner and visor in Cogler’s car were torn, also indicating a struggle took place in the front seat of the car. Most damning, however, was the other-crimes evidence produced by the State at trial showing a common design or plan by petitioner to sexually assault and strangle several women in Cogler’s car within the space of a few hours of Cogler’s murder. The jury further heard evidence of petitioner’s initial statement to police regarding the Cooney sexual assault and murder in which he also claimed to have engaged in consensual sexual intercourse before killing her. See 
Cloutier
, 156 Ill. 2d at 500-06.

Furthermore, Grubisch’s statements that petitioner and Cogler were acting like a couple for the night and that they left the bar together once earlier add nothing new to Grubisch’s testimony for the State at trial that the two were on friendly terms before leaving the bar. Specifically, Grubisch testified that Cogler voluntarily left with petitioner at closing time and planned to drive him home. Nevertheless, the jury still found that petitioner sexually assaulted Cogler in her car. Thus, petitioner was not prejudiced by defense counsel’s failure to bring forward Grubisch’s additional testimony now contained in her affidavit.

Finally, petitioner suffered no prejudice during his sentencing hearing because he was found death-eligible on the independent basis of having murdered more than one person. 720 ILCS 5/9–1(b)(3) (West 1994). The outcome of petitioner’s sentencing thus would have been no different even if the jury had found that petitioner did not commit Cogler’s murder in the course of another felony.

State’s Failure to Disclose Evidence

Petitioner next claims that the prosecution failed to disclose to defense counsel Grubisch’s statements that petitioner and Cogler were acting like a couple for the night and left the bar together once before closing time. Petitioner argues that the prosecution’s failure to disclose this favorable and material evidence denied him due process and a fair trial and sentencing hearing in violation of 
Brady v. Maryland
, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963).

In 
Brady
, the United States Supreme Court required disclosure of evidence that is both favorable to the accused and “ ‘material either to guilt or to punishment.’ ”
 People v. Morgan
, 187 Ill. 2d 500, 539 (1999), quoting 
Brady
, 373 U.S. at 87, 10 L. Ed. 2d at 218, 83 S. Ct. at 1197. Under 
Brady
 and its progeny, favorable evidence is material, and constitutional error results from its suppression by the government “ ‘if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.’ ” 
Coleman
, 183 Ill. 2d at 393, quoting
 United States v. Bagley
, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494, 105 S. Ct. 3375, 3383 (1985). Materiality is demonstrated by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light so as to undermine confidence in the verdict. 
Coleman
, 183 Ill. 2d at 393, quoting
 Kyles v. Whitley
, 514 U.S. 419, 435,  131 L. Ed. 2d 490, 506, 115 S. Ct. 1555, 1566 (1995).

Taking petitioner’s allegations that the prosecution failed to disclose Grubisch’s statements as true, we find this evidence lacks the requisite materiality under 
Brady
 and its progeny. As explained above, the evidence of sexual assault presented at petitioner’s trial was overwhelming. See 
Cloutier
, 156 Ill. 2d at 500-06. We do not believe that, had the testimony contained in Grubisch’s affidavit been disclosed to the defense, it is reasonably probable that the outcome of either the trial or the sentencing hearing would have been different. Nor do we believe this evidence could reasonably have put the entire case in such a different light so as to undermine the petitioner’s conviction of aggravated criminal sexual assault. The evidence allegedly withheld by the State is merely cumulative of that already presented at trial, namely, that petitioner and Cogler were on friendly terms and left the bar together at closing time the night of Cogler’s murder. The State committed no 
Brady
 violation.

Use of Guilty Plea to Other Murder

Petitioner next challenges the use of his plea of guilty to the unrelated Cooney murder as a basis for finding him death-eligible in the instant case. First, petitioner argues that counsel in the Cooney case was ineffective for failing to inform him that his guilty plea could be used as a basis to sentence him to death in the instant case. Petitioner, however, may not raise a challenge to the conduct of his counsel in the Cooney case in this wholly separate proceeding. This court’s review is limited to the proceedings which resulted in his convictions for crimes committed against Alice Cogler only. See 725 ILCS 5/122–1(a) (West 1996).

Second, petitioner argues that defense counsel in the instant case was ineffective for failing to sufficiently investigate the circumstances surrounding his guilty plea in the Cooney case and for failing to properly defend him against the State’s use of this guilty plea to find him death-eligible. Attorney Stephen Richards was assigned to defend petitioner at the eligibility phase of his resentencing. Richards was new to the case and had not previously represented petitioner in any other matters, although he states in his affidavit that he was aware petitioner had pleaded guilty to the Cooney murder. Upon learning that the State intended to use petitioner’s guilty plea to the Cooney murder as an additional basis for finding him death-eligible, Richards filed motions 
in limine
 seeking to bar use of the plea on grounds of double jeopardy and the failure of the trial judge in the Cooney proceeding to admonish petitioner that his conviction could be used against him in another case. Petitioner argues that counsel should have conducted additional investigation of his guilty plea to the Cooney murder, which he claims would have revealed that his plea in that case was based on the ineffective assistance of counsel and was therefore uninformed and involuntary. The failure to conduct such an investigation and to file an objection on such grounds, petitioner claims, constitutes ineffective assistance of counsel.

In order to establish that he was denied effective assistance of counsel, petitioner must first show that counsel’s actions fell below an objective standard of reasonableness. 
Strickland
, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. In assessing counsel’s performance, the reviewing court must indulge in a strong presumption that counsel’s conduct fell into a wide range of reasonable representation, and the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. 
People v. Mack
, 105 Ill. 2d 103, 131 (1984). In conducting an investigation, counsel has only a duty to make reasonable investigations or to make a reasonable decision which makes particular investigations unnecessary, and the reasonableness of a decision to investigate is assessed by applying a heavy measure of deference to counsel’s judgment. 
People v. Orange
, 168 Ill. 2d 138, 149 (1995).

Under the forgoing standards, we do not believe counsel’s representation of petitioner at his eligibility hearing fell below an objective standard of reasonableness. Petitioner does not claim that Richards failed to conduct any investigation before defending him at the eligibility phase of his sentencing. Indeed, the motions 
in limine
 filed by Richards necessarily required investigation into the circumstances surrounding his guilty plea to the Cooney murder. It was not unreasonable for Richards to forgo additional investigation into why petitioner changed his plea from not guilty to guilty in the Cooney murder. See 
People v. Pecoraro
, 175 Ill. 2d 294, 324 (1997); 
Orange
, 168 Ill. 2d at 150. The motions 
in limine
 filed by Richards seeking to bar use of the prior murder conviction, though ultimately unsuccessful, constituted a reasonable level of assistance.

Aggravation-Mitigation Hearing

Petitioner next argues that he was denied effective assistance of counsel during the aggravation-mitigation phase of his death penalty hearing because his attorneys failed to develop or present accurate mitigation evidence, and instead presented nonmitigating and erroneous evidence which actually caused him harm.

At sentencing, the defense presented evidence in mitigation attempting to show that petitioner’s offenses were the result of his polysubstance abuse and antisocial and narcissistic personality disorders. Dr. Lawrence Heinrich, a psychologist, testified for the defense that he believed petitioner was suffering from an extreme mental or emotional disturbance at the time he committed the Cogler and Cooney murders. The defense also presented testimony from Alvin Hill, a mitigation specialist employed by the Cook County public defender’s office, who opined that petitioner committed the murders because he was “drugging.” Petitioner contends, however, that a neuropsychological evaluation conducted after his sentencing hearing revealed that he suffers from an organic brain dysfunction. Petitioner further claims that subsequent post-conviction investigation revealed that petitioner’s low birth weight and head trauma as a child could also account for his psychological dysfunctions and behavior problems, information which was not presented at the sentencing hearing. Petitioner claims that his criminal activity was not the result of drug abuse, as the jury heard at his sentencing, but rather was the product of a traumatic and violent childhood. According to petitioner, the failure by defense counsel to properly investigate and present this information in mitigation places the reliability of his death sentence in serious doubt. We disagree.

Defense counsel’s performance at the penalty phase of a sentencing hearing is measured by the two-part standard of 
Strickland
. Under 
Strickland
, a defendant must show that counsel’s performance fell below an objective standard of reasonableness and that, absent the errors, the judge “would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.”
 Strickland
, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2069.

Counsel’s failure to order neuropsychological testing of petitioner prior to his sentencing was not unreasonable. Each of the three psychologists who examined petitioner concluded that he suffered from personality disorders. None of the experts found anything to indicate that petitioner suffered from an organic brain disorder, and there was nothing to indicate that further testing would be beneficial in any way. Counsel’s decisions to investigate must be assessed in light of the information known at the time the decisions are made. In the instant case, defense counsel’s decision not to investigate further into organic brain disorders, electing instead to present mitigation evidence of petitioner’s personality disorders, was trial strategy and was not unreasonable under the circumstances.

We further find no error with regard to the allegedly inaccurate evidence presented in mitigation. In his post-conviction petition, petitioner relies on a report prepared by Marylynne Kaplan, a social worker, which cites scientific evidence allegedly showing that petitioner’s criminal history was not the result of his “drugging,” but rather was the product of his dysfunctional family history, a childhood plagued by violence and a mother who was emotionally distant and depressed. A review of the record, however, reveals that, while the primary theory advanced by the defense was that petitioner’s actions were the product of his impaired judgment due to drug and alcohol abuse and personality disorders, the jury also heard testimony of petitioner’s failure to find a place within his family, his rejection by his mother, his inability to relate to female members of his family including his four sisters, and his lack of a male role model while growing up. Alvin Hill also testified in mitigation regarding petitioner’s drug use since the age of 12, his constant truancy throughout adolescence, his running away from home, his mother’s abandonment of him, and his placement with juvenile authorities on several occasions. Given the extent of the testimony heard by the jury regarding petitioner’s troubled childhood and family dysfunction, we believe that the additional information contained in Kaplan’s report is merely cumulative of that already presented and would not have changed the outcome of petitioner’s sentencing. Thus, petitioner has failed to demonstrate that he suffered prejudice from defense counsel’s failure to present the information found in Kaplan’s report at sentencing.

Petitioner further contends that defense counsel made a manifestly incompetent decision to present the dubious expert testimony of Dr. Heinrich at the aggravation-mitigation hearing. A review of the record, however, belies petitioner’s claims that Dr. Heinrich, the defense expert, was ill-prepared and did not have adequate notice from which to prepare his mitigation evidence. Dr. Heinrich was first contacted by defense counsel in August 1994, several months prior to petitioner’s resentencing hearing. Dr. Heinrich interviewed petitioner on two separate occasions and conducted several personality tests. In addition, Dr. Heinrich reviewed police reports, investigative reports and trial transcripts, as well as reports of psychological evaluations conducted by two previous experts, Dr. Schwarz and Dr. Cavanaugh. The record also reveals that petitioner himself was responsible for any lack of preparation by Dr. Heinrich because he specifically instructed Dr. Heinrich not to speak with his mother or with his four sisters because he did not want them involved in the instant proceedings.

Remaining Claims

Petitioner argues that Marijane Placek, lead counsel during the aggravation-mitigation phase of petitioner’s sentencing hearing, may have been influenced in her defense by a fear of later claims of ineffectiveness and thus acted under a conflict of interest. Petitioner’s claims, however, are unsupported by the record or by affidavits, and amount to no more than speculation. Thus, the trial court properly denied relief on this basis.

Petitioner also raises the following three arguments: that he was denied due process by the prosecution’s use of his plea of guilty to the Cooney murder to find him death-eligible because, at the time he committed the Cogler murder, he could not have been found death-eligible under the multiple-murder aggravating factor; that the prosecution’s use of certain victim impact evidence and argument relating to crimes other than the Cogler and Cooney murders denied him a fair sentencing hearing; and that the Illinois Pattern Instructions used at the sentencing hearing were unconstitutionally vague and confusing. Each of these arguments is waived however, because it could have been previously raised but was not. See
 People v. Madej
, 177 Ill. 2d 116, 127 (1997).

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed. The clerk of this court is directed to enter an order setting Wednesday, November 29, 2000, as the date on which the sentence of death entered in the circuit court of Cook County is to be carried out. Defendant shall be executed in the manner provided by law. 725 ILCS 5/119–5 (West 1998). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, to the warden of Tamms Correctional Center, and to the warden of the institution where defendant is now confined.

Affirmed.

CHIEF JUSTICE HARRISON, dissenting:

I disagree with the majority’s assertion that Cloutier cannot raise an ineffective assistance of counsel claim in this proceeding based on the advice he received from his attorney to plead guilty in the Cooney case. The Post-Conviction Hearing Act, upon which my colleagues rely, provides that

“[a]ny person imprisoned in the penitentiary who asserts that in the proceedings which resulted in his [or her] conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both may institute a proceeding under this Article.” 725 ILCS 5/122–1(a) (West 1996).

Although the Cooney case involved a separate set of circumstances, it was inextricably linked to the present matter because it provided one of the predicates for Cloutier’s eligibility for the death penalty. As such, it was part of the “proceedings” which resulted in the judgment challenged by Cloutier here. Accordingly, defense counsel’s recommendation to plead guilty in the Cooney matter was a proper subject for Cloutier’s post-conviction challenge to his death sentence in this case.

Having reached this conclusion, I nevertheless do not feel it necessary to resolve whether Cloutier’s attorney did, in fact, provide ineffective assistance. Regardless of counsel’s performance, Cloutier’s sentence of death cannot be allowed to stand. For the reasons set forth in my partial concurrence and partial dissent in
 People v. Bull
, 185 Ill. 2d 179 (1998), the Illinois death penalty law violates the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, §2). Cloutier’s sentence of death should therefore be vacated and he should be sentenced to a term of imprisonment. 720 ILCS 5/9–1(j) (West 1994).