# Illinois Official Reports

## Appellate Court

***People v. Akins*, 2016 IL App (4th) 150539**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEVIN I. AKINS, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-15-0539 |
| Filed | September 22, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 13-CF-1818; the Hon. Harry E. Clem, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Sonthonax B. Saintgermain (argued), all of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, David J. Robinson, and John M. Zimmerman (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Justices Harris and Appleton concurred in the judgment and opinion. |

**OPINION**

¶ 1    This appeal arises from the trial court's June 2015 denial of a supplemental motion to withdraw a guilty plea and vacate the court's judgment filed by defendant, Kevin I. Akins. Defendant urges this court to vacate his conviction for delivery of a controlled substance (less than one gram of a substance containing cocaine) (720 ILCS 570/401(d) (West 2012)) and remand for further proceedings because of the alleged ineffectiveness of his guilty-plea counsel. Defendant bases his claim on counsel's purported failure to disclose and discuss with him all the evidence upon which counsel based her recommendation that he enter a guilty plea. We affirm.

¶ 2                          I. BACKGROUND
¶ 3                      A. The State's Charges
¶ 4    In November 2013, the State charged defendant with (1) two counts of possession with intent to deliver a controlled substance (less than one gram of a substance containing cocaine) (720 ILCS 570/407(b)(2) (West 2012)) (counts I and IV) and (2) two counts of delivery of a controlled substance (less than one gram of a substance containing cocaine) (720 ILCS 570/401(d) (West 2012)) (counts II and III).

¶ 5                     B. Defendant's Guilty Plea
¶ 6    At an April 2014 pretrial hearing, defendant's guilty-plea counsel, Assistant Public Defender Stephanie Corum, informed the trial court that defendant intended to enter a guilty plea to count III, which defendant confirmed to the court. In exchange for defendant's guilty plea, the State agreed to (1) dismiss the remaining counts and (2) recommend that the court impose an eight-year extended-term sentence. The court then admonished defendant in compliance with Illinois Supreme Court Rule 402(a) (eff. July 1, 2012). During the court's admonishments, the State provided the following factual basis:

> "[T]he evidence would show that on October 28, 2013, the Champaign police department conducted a controlled buy using a confidential source who purchased $40.00 worth of cocaine, weighing .5 grams from *** defendant ***, and at that time [defendant] was out on bond in [Champaign County case No.] 12-CF-1927."

¶ 7    After finding that defendant's guilty plea was knowing and voluntary, the trial court accepted the State's sentencing recommendation and imposed an extended term of eight years in prison, to be served consecutively to an eight-year prison sentence imposed in case No. 12-CF-1927.

¶ 8            C. Defendant's Supplemental Motion To Withdraw His Guilty Plea
                   and Vacate the Trial Court's Judgment
¶ 9    In May 2014, defendant—through Corum—filed a motion to withdraw his guilty plea and vacate the trial court's judgment, which was based on allegations of Corum's ineffectiveness as guilty-plea counsel. Specifically, defendant asserted that (1) despite his innocence, he pleaded guilty to count III because he was concerned about the possible sentencing ranges in the three remaining counts; (2) Corum failed to file a motion requesting the identity of the

confidential source; and (3) defendant did not have sufficient time to review the State's offer or make additional counteroffers to "secure the term of sentence that he wanted."

¶ 10 In September 2014, defendant—through different counsel—filed a supplemental motion to withdraw his guilty plea and vacate the trial court's judgment, which added the following claims: (1) Corum told him that "he had to accept the State's [guilty-plea offer] immediately or lose all counts against him at trial"; (2) he did not have sufficient time to "discuss the plea" and was "intimidated [by Corum's] statements about how much more prison time he would receive if he did not accept the [State's guilty-plea] offer"; (3) after the court imposed his eight-year prison sentence, Corum sent him photographs from a police surveillance recording; and (4) he is not depicted in any of the photographs at issue.

¶ 11 D. The Hearing on Defendant's Supplemental Motion To Withdraw
His Guilty Plea and Vacate the Trial Court's Judgment

¶ 12 1. *Defendant's Evidence*

¶ 13 At a hearing held later in September 2014, defendant testified that at the time he pleaded guilty in the instant case, he was serving an eight-year prison sentence. During the April 2014 guilty-plea hearing, defendant felt "rushed" and did not have enough time to consider the State's guilty-plea offer because he surmised, "[e]ither I take the time, or I go to trial." Defendant added that (1) he "never [saw] what was going on in my case" and (2) Corum told him that he had a "possible chance of losing," which made defendant feel like it was a take-it-or-leave-it proposition. As a result, defendant felt that he "had to take" the State's eight-year offer. Defendant wanted additional time to make counteroffers to possibly negotiate a lower sentence, adding that he "mentioned seven years, six years[,] *** four years" to Corum.

¶ 14 Defendant acknowledged that Corum informed him of the eight-year offer while he was in prison. At the April 2014 hearing, defendant spoke to Corum "for two or three seconds" before telling her that he would accept the State's guilty-plea offer. Defendant noted that the short time he had to discuss the State's offer with Corum affected his decision. Defendant was also concerned that he would be found guilty on the State's remaining three counts. Defendant acknowledged that during the April 2014 guilty-plea hearing, he told the trial court that he had not been threatened, intimidated, or forced to plead guilty, but, in retrospect, he felt rushed, despite his admissions to the court.

¶ 15 Defendant asserted his innocence and that he did not want to plead guilty but reiterated that he felt rushed to do so. After entering his guilty plea, defendant received police surveillance pictures from Corum. Defendant acknowledged that he had previously seen some pictures, but "I did not see all of them." Defendant stated that he was not depicted in any of the pictures that Corum sent. Defendant added that he asked Corum on several occasions to file a motion to disclose the confidential source but she failed to do so.

¶ 16 Defendant acknowledged that in December 2013, Corum explained (1) the sentencing ranges on each of the State's four charges; (2) that probation was not an option; (3) "what would happen" if he opted to go to trial; (4) the State's evidence on each count charged; (5) that defendant could be found not guilty on some of the State's charges; (6) the strong possibility that defendant could be found guilty; (7) the strengths and weaknesses of the State's case; (8) that if he opted to go to trial, the State would reveal the identity of the confidential source just

prior to trial; (9) in her opinion, the State tendered a fair guilty-plea offer; (10) that it was defendant's choice whether to accept or reject the State's guilty-plea offer; and (11) that if he opted to go to trial, Corum would defend him to the "fullest extent." Defendant noted that he had—at most—a week to consider the State's eight-year guilty-plea offer.

¶ 17                                    2. *The State's Evidence*

¶ 18        Corum testified that in November 2013—shortly after her assignment to defendant's case—she explained the sentencing ranges defendant was facing and conveyed the State's then 15-year guilty-plea offer. During his incarceration, Corum called defendant and, thereafter, documented each call in a letter, which she sent to defendant. During those conversations, Corum discussed the possibility of defendant pleading guilty or going to trial, which Corum told defendant was entirely his choice. After reviewing the State's evidence, Corum told defendant that he had a chance of being found not guilty on two counts because of a lack of evidence. Corum also told defendant that the State's best evidence was on count III, which depicted him in a surveillance recording. Corum also sent defendant photographs the State had disclosed.

¶ 19        Corum noted that defendant asked to see the surveillance recordings, but "because he was in the Department of Corrections, that was a complicated process." Instead, Corum sent defendant a photograph she had taken from a paused portion of the surveillance recording, which she believed "depicted [defendant] in the best fashion," and an accompanying letter. Corum informed defendant that once the State revealed the confidential source, any guilty-plea offers made would be rescinded, and the State would proceed to trial. Thereafter, Corum testified to the content of the following three letters she sent to defendant.

¶ 20        In December 2013, Corum sent defendant a three-page letter addressed to Big Muddy Correctional Center, where defendant was incarcerated. In her letter, Corum (1) confirmed defendant's next court date, (2) explained the State's four charges and the associated sentencing ranges, and (3) noted that any sentence imposed had to be served consecutively to the sentence defendant was serving in a different case. Corum provided defendant the following three options: (1) proceed to trial, (2) accept the State's then 15-year guilty-plea offer, or (3) enter an open guilty plea. Corum then explained the procedures defendant would face under each option.

¶ 21        Corum's December 2013 letter also "outline[d] the evidence in [defendant's] case," which included (1) when and where the transactions took place, (2) the telephone number the confidential source used to initiate contact, and (3) the weight of the controlled substance and the amount of cash that were exchanged during each transaction. Corum then provided extensive details regarding the procedures police used to conduct three controlled buys on October 14, 23, and 28, 2013, which included recording and photographing the October 23 and 28 transactions. Based on the State's discovery, Corum informed defendant that she expected the police officer supervising the controlled buys would testify that defendant was the person who delivered the controlled substances. Corum scheduled a January 2014 phone appointment, in which she stated her intent to answer defendant's questions.

¶ 22        On February 7, 2014, Corum sent a second letter, confirming a February 2014 hearing to "either enter into a negotiated plea or to prepare for trial the following week." Corum then reviewed defendant's aforementioned options "one last time," which included a summary of the charges defendant was facing and the associated sentencing ranges. With regard to

defendant's request to file a motion to disclose the confidential source, Corum explained, as follows:

"I don't need to file a motion *** because the State will give us that name the day before trial, and they do not have to give us that name until the day before trial. The reason is that these confidential sources are put under protection for their safety ***. The State only has to give me the name right before trial so I may look up criminal history *** to try to attack their credibility. *** Based on the evidence that I have reviewed, I believe that you could give me the name of this person right now if you wanted to since the video shows you having contact with this person."

¶ 23    Corum confirmed that the State's then current offer was eight years in exchange for defendant pleading guilty to one count of delivery of a controlled substance and that the State's offer was valid until February 14, 2014, when defendant was scheduled to appear in court. Corum opined that based on the evidence she reviewed, the State (1) "will prove you guilty on at least [c]ount [III]" and (2) "may have enough evidence to convict you of [c]ount [I] or [c]ount [IV] ***." In closing, Corum provided the following guidance:

"I am advising you to take this negotiated offer because I believe it is a fair offer considering the evidence that the State has against you ***. I want to remind you that this is your choice and *** I will defend your case to the fullest extent of my abilities should you decide to take your case to trial."

¶ 24    During her direct testimony, Corum recounted that at the February 2014 hearing, defendant intended to plead guilty but changed his mind. Corum explained, as follows:

"[Defendant] indicated *** that he needed more time. We reviewed the sentencing order, and he said that he wasn't ready to plead. So, I believe at that point, we set his case for *** the April trial call and I asked the court to writ him back a week early so that he and I could review the confidential source as well as [defendant] could watch the video in full prior to trial."

¶ 25    On March 17, 2014, Corum sent defendant a third letter, in which she explained, in pertinent part, defendant's options, as follows:

"I am going to explain to you how things have happened in your case up to this point and how they will happen going forward. You need to make your decision before court and be ready to go when the court date happens. Your first offer was 15 years ***. I talked to you on January 10, 2014, and you gave me permission to begin negotiating *** for [six] years as a starting number. I negotiated back and forth with the State between January 10, 2014, and February 4, 2014. I started with 6 [years] and the [State] came back with 10 [years]. *** I *** offered [eight] years which [the State] accepted. When I talked with you on January 10, 2014, I told you that I believed the best we could hope for was [eight] years because that is what you are already serving. I sent you a letter on February 7, 2014, to tell you about your options and also to tell you about the offer. I also talked with you by phone again on February 7[, 2014,] to review your options and to tell you the offer. It appeared to me at that time that you may not take the offer because you requested that I get the name of the confidential source. ***

When you returned to court on February 14, [2014,], the [State] revoked the offer *** and made you a new offer of 10 years the following week. *** I have been negotiating with the [State]. On March 14, 2014, the [State] made the following offer.

- 5 -

You plead guilty to *** possession with intent to deliver for [eight] years on [the] April 14[, 2014, hearing date]. If you do not plead guilty on that day, the [State] will bring me discovery on the confidential source and all offers will be revoked. We then go to trial ***. So you understand you have three options. Plead guilty [to] an offer of [eight] years, take your case to trial, or make an open plea of guilty ***."

Corum noted that at the April 2014 hearing, she anticipated going to trial the following week. Just prior to that hearing, defendant stated his intent to plead guilty in exchange for the State's eight-year guilty-plea offer.

¶ 26 On cross-examination, defendant's counsel asked Corum about three specific photographs the State had disclosed. Corum confirmed that two of the photographs did not depict defendant, but she opined that the third picture (defendant's exhibit No. 3) was a picture of defendant. Corum explained that she sent the first two pictures to defendant because defendant wanted to know who would be testifying against him at trial. As to exhibit No. 3, Corum stated that she sent defendant that picture "virtually every time I sent him a letter."

¶ 27                                    3. *The Trial Court's Judgment*

¶ 28 Following argument, the trial court denied defendant's supplemental motion to withdraw his guilty plea and vacate the court's judgment, finding that defendant's guilty plea was knowing and voluntary.

¶ 29                                    E. Subsequent Proceedings

¶ 30 Defendant appealed, but this court summarily remanded that appeal for strict compliance with Illinois Supreme Court Rule 604(d) (eff. Dec. 11, 2014). *People v. Akins*, No. 4-14-0851 (Feb. 23, 2015) (unpublished summary remand order).

¶ 31 In April 2015, defendant's newly appointed counsel filed a certificate in compliance with Rule 604(d). The following month, defendant's counsel filed a motion in which counsel informed the trial court that (1) a new postplea motion was not necessary and (2) counsel intended to stand on defendant's previously filed May 2014 motion to withdraw his guilty plea and vacate the court's judgment, which defendant supplemented in September 2014.

¶ 32 In June 2015, the trial court conducted a second hearing on defendant's supplemental motion "to determine whether there was anything in addition to the evidence presented at the hearing herein on September 26, 2014." At that second hearing, defendant and Corum testified during defendant's case in chief. The State did not present evidence. (We decline to present a summary of the evidence presented at the June 2015 hearing because, in their respective briefs to this court, the parties concede that the evidence defendant presented at the June 2015 hearing was substantially similar to the evidence presented at the September 2014 hearing.) Following argument, the court stated, in part, the following:

"[T]he evidence is that the [State's] initial plea offer was 15 years. *** [D]efendant rejected that offer. The [State] then offered 10 years. *** [D]efendant rejected that offer. In February of 2014, *** defendant was brought to the court with the intent that he would plead guilty to eight years but, on that particular occasion, he indicated that he wasn't ready for a plea and the matter was set over until the April trial call of this court. So it isn't the case that *** defendant was rushed into a plea. He had more than two months to consider the plea offer."

In concluding, the court stated that "defendant's contentions in his motion and supplemental motion are not supported by credible evidence and \*\*\* for that reason, the court has denied the relief requested."

¶ 33    This appeal followed.

¶ 34                              II. ANALYSIS
¶ 35                         A. The Standard of Review
¶ 36    A defendant has no absolute right to withdraw his guilty plea. *People v. Hughes*, 2012 IL 112817, ¶ 32, 983 N.E.2d 439. Instead, a defendant "must show a manifest injustice under the facts involved." *Id.* We will not reverse a trial court's decision denying a defendant's motion to withdraw his guilty plea unless the trial court abused its discretion. *People v. Chavez*, 2013 IL App (4th) 120259, ¶ 14, 998 N.E.2d 143. " 'An abuse of discretion occurs where the trial court's decision is arbitrary, fanciful, or unreasonable [citation] or where no reasonable person would agree with the position adopted by the trial court [citations].' " *People v. Shaw*, 2016 IL App (4th) 150444, ¶ 61, 52 N.E.3d 728 (quoting *People v. Becker*, 239 Ill. 2d 215, 234, 940 N.E.2d 1131, 1142 (2010)).

¶ 37                  B. Ineffective Assistance of Counsel Claims
¶ 38    Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a defendant to demonstrate both a deficient performance by trial counsel and prejudice arising therefrom. *People v. Guzman*, 2014 IL App (3d) 090464, ¶ 32, 24 N.E.3d 831. "To show prejudice in the plea context, the defendant must demonstrate that but for trial counsel's error, there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial." *Id.* ¶ 33. A defendant's failure to satisfy either *Strickland* prong—that is, to show either deficient performance or actual prejudice—is fatal to an ineffective assistance of counsel claim. *People v. Clendenin*, 238 Ill. 2d 302, 317-18, 939 N.E.2d 310, 318 (2010).

¶ 39              C. Defendant's Claims of Ineffective Assistance of Counsel
¶ 40    In his brief to this court, defendant presents his ineffective assistance of counsel claims in three separate arguments. Specifically, defendant contends that (1) counsel failed to disclose and discuss the evidentiary basis upon which she recommended that defendant enter a guilty plea, (2) counsel failed to assess and discuss with him the impact of relevant evidence on his decision before advising him to enter a guilty plea, and (3) counsel's actions ultimately denied defendant the right to effective assistance of counsel.

¶ 41    We note, however, that the fundamental premise underlying all of defendant's contentions is his following assertion: "[W]here \*\*\* counsel's advice is on a fundamental right held by the defendant, such as whether to plead guilty or not, [counsel] is required to support [that] advice with *all the evidence* that leads [counsel] to give [that] recommendation." (Emphasis added.) Defendant adds that counsel had a constitutional duty to present and discuss with him all of the relevant evidence before advising him to plead guilty. We emphatically reject that defendant's claims should be evaluated under his proposed standard.

¶ 42    A criminal defendant personally possesses a constitutional right to elect what plea to enter. *People v. Williams*, 2016 IL App (4th) 140502, ¶ 33, 54 N.E.3d 934. Although a defendant

does not have a constitutional right to a plea bargain, if the State elects to make a guilty-plea offer, the defendant has a constitutional right to the effective assistance of counsel during the ensuing negotiations. *People v. Guerrero*, 2011 IL App (2d) 090972, ¶ 61, 953 N.E.2d 936. "[U]nderlying a defendant's constitutional right to either plead guilty or not guilty is the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or rejecting a guilty-plea offer from the State." (Emphasis added.) *Williams*, 2016 IL App (4th) 140502, ¶ 33, 54 N.E.3d 934. In order for a defendant's decision to plead guilty to be a knowing and voluntary one, a criminal defense attorney must fully inform herself of the facts and the law relevant to the State's offer and candidly advise her client as to the direct consequences of accepting or rejecting the guilty-plea offer. *People v. Brown*, 309 Ill. App. 3d 599, 605, 723 N.E.2d 362, 366 (1999).

¶ 43   In this case, defendant's ineffective assistance of counsel claim concerns primarily the following two pieces of evidence: (1) the police surveillance recording and (2) defendant's exhibit No. 3—an image taken from one frame of the surveillance recording showing what Corum believed was defendant's image. Specifically, defendant asserts that Corum had a constitutional duty to show and discuss that recording with him before advising him to plead guilty. Defendant also asserts that the image derived from the recording did not provide him the "same level of information" because the recording would have shown the entire sale with audio and "may also contain more identifying features that would lead [him] to better assess the evidence against him." Defendant notes that Corum "believed that the State would meet its burden of proof by introducing the [surveillance recording] from which defendant's exhibit [No.] 3 was produced." From this premise, defendant then assets that Corum "failed to appropriately deliberate with [defendant] on either his or her assessment of the evidence on this important matter by showing and discussing the evidence with him."

¶ 44   Given our aforementioned recitation of the actions Corum took to (1) inform defendant about the severity of the charges and sentences he faced, (2) apprise defendant at appropriate intervals regarding the status of his case, (3) provide candid advice concerning his available options, and (4) document her assessment concerning the direct consequences of accepting or rejecting the State's guilty-plea offer and providing that summation to defendant, we deem bizarre defendant's claim that Corum's performance was constitutionally deficient in any sense. We reject defendant's implication that guilty-plea counsel is constitutionally mandated to marshal the entirety of the State's case—including every piece of relevant physical evidence the State discloses—and not only present it to defendant for inspection but also discuss in detail its impact on defendant's decision whether to enter a guilty plea or proceed to trial. Defendant is essentially contending that his guilty-plea counsel was somehow required to garner all of the State's evidence and then present it to defendant in such a fashion as to convince him of the strength of the State's case and that he will be convicted if the case goes to trial. We emphasize no such requirement exists.

¶ 45   Through various phone conversations with defendant and the aforementioned correspondence sent to defendant, Corum demonstrated her thorough knowledge of the State's case, which she conveyed to defendant. In conducting her assessment of defendant's case, Corum's only duty was "to make reasonable investigations or to make a reasonable decision which makes particular investigations unnecessary." *People v. Cloutier*, 191 Ill. 2d 392, 402-03, 732 N.E.2d 519, 525 (2000). Our standard in evaluating counsel's conduct is to apply "a heavy measure of deference to counsel's judgment." *Id.* at 403, 732 N.E.2d at 525. Contrary

to defendant's claims, the record shows that Corum's actions to keep defendant fully informed about his guilty-plea options were exemplary and far beyond what she was required to do.

¶ 46 Although defendant would have this court focus solely on the surveillance recording and the photograph derived from that recording, he fails to mention that the State was also prepared to solicit testimony from the police officer supervising the controlled buys that defendant was the person who sold the contraband at issue to the confidential source. Defendant fails to explain how Corum's additional discussions with defendant—above and beyond what she had already conveyed in her phone conversations and correspondence—would have served to further inform defendant's decision to plead guilty or proceed to trial. Therefore, we disagree with defendant's assessment that Corum's decision to provide only a single photograph from that recording depicting what she opined was his image was unreasonable. *Id.*

¶ 47 At multiple times throughout her representation, Corum explained to defendant (1) the sentencing ranges on each of the State's four charges; (2) that probation was not an option; (3) the consequences if he opted to go to trial; (4) the State's evidence on each count charged; (5) that defendant could be found not guilty on some of the State's charges; (6) the strong possibility that defendant could be found guilty on other charges; (7) the strengths and weaknesses of the State's case; (8) that if he opted to go to trial, the State would reveal the identity of the confidential source just prior to trial; (9) that she believed the State tendered a fair guilty-plea offer; (10) that it was defendant's choice whether to accept or reject the State's guilty plea offer; and (11) that if he opted to go to trial, she would defend him to the "fullest extent." We note that despite defendant's current claim that Corum provided ineffective assistance, he does not dispute the aforementioned actions Corum took on his behalf. Accordingly, we conclude that the trial court did not abuse its discretion by denying defendant's supplemental motion to withdraw his guilty plea and vacate the court's judgment.

¶ 48 In so concluding, we note that Corum's representation should not be considered the standard that all defense counsel are expected to maintain. Simply put, Corum's representation of defendant in these proceedings was truly exceptional and demonstrated a commitment that was well beyond the reasonable standard normally expected of guilty-plea counsel. We commend Corum for her extraordinary efforts.

¶ 49                                    III. CONCLUSION

¶ 50 For the foregoing reasons, we affirm the trial court's judgment. As part of our judgment, we award the State its $75 statutory assessment as costs of this appeal. 55 ILCS 5/4-2002 (West 2014).

¶ 51 Affirmed.